523 S.E.2d 784

**The STATE, Respondent,**

v.

**Tammy Lynn DIXON, Appellant.**

**No. 3063.**

Court of Appeals of South Carolina.

Heard Oct. 7, 1999.

Decided Oct. 25, 1999.

Rehearing Denied Dec. 25, 1999.

456

Assistant Appellate Defender Melissa J. Reed Kimbrough, of South Carolina Office of Appellate Defense, of Columbia, for appellant.

Attorney General Charles M. Condon, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott and Senior Assistant Attorney General Norman Mark Rapoport, all of Columbia; and Solicitor W. Townes Jones, IV, of Greenwood, for respondent.

GOOLSBY, Judge:

Tammy Lynn Dixon appeals her conviction for first degree burglary, arguing the trial court erred in refusing her motion for a directed verdict. We affirm.

## FACTS

This case arises from the attack and robbery of a sixty-four year-old retired, deaf widower ("Victim") in his home. The State presented testimony that Dixon, her brother, and Bobby Caughman decided to go to Victim's house to get money to purchase crack cocaine. A third man, Luther Belcher, agreed to drive the group to Victim's house in exchange for twenty dollars. They told Belcher that Victim owed one of the men money. Dixon provided Belcher with directions to Victim's home.

When they arrived at Victim's home on the evening of January 7, 1997, Dixon went alone to the door. Because of their prior relationship, Victim unlocked the door and let Dixon in on sight. He then locked the door behind her. Dixon and Victim communicated by writing notes. Dixon asked Victim for money as she had done many times before. Victim refused to give Dixon money and told her she needed to get a job.

At some point, Dixon walked over to the door, unlocked it, and began talking to someone outside. Belcher, who was still seated in the car, testified that he saw Dixon motion to her brother and Caughman. Victim then stated that he saw two men enter his home through the door. They covered Victim's head, handcuffed his hands behind his back, beat him, kicked him and left him lying on the floor. Caughman and Dixon's brother then ransacked Victim's home, stealing jewelry, $800 in cash, and checks, before fleeing. The two men returned later that evening to steal Victim's truck.

A neighbor heard Victim crying for help at 11:00 a.m. the next day. When she found Victim, who had remained lying handcuffed on his floor since the assailants left the night before, she called the police and emergency services. Emergency personnel transported Victim to the hospital. His treating physician considered his condition life-threatening because of the significant drop in his body temperature to

91.1°F. Victim also received treatment for bruises on his face, scalp, and lower legs.

Dixon was indicted on charges of first degree burglary, kidnapping, grand larceny of a motor vehicle, and assault and battery with intent to kill. The trial court granted Dixon's motion for a directed verdict on the grand larceny charge because the State did not present evidence she participated in the theft of Victim's truck. The trial court denied her motion for a directed verdict on the other charges including the first degree burglary charge. The jury convicted Dixon of first degree burglary, kidnapping, and assault and battery of a high and aggravated nature.

The trial court sentenced Dixon to concurrent thirty-year terms of imprisonment on the burglary and kidnapping convictions, a ten-year consecutive term for assault and battery of a high and aggravated nature, and a ten-year concurrent term for violating the terms of her parole. Dixon appeals her first degree burglary conviction, arguing the trial court erred in denying her motion for a directed verdict.

## LAW/ANALYSIS

In ruling on a motion for a directed verdict, the trial court is concerned with the existence of evidence rather than with its weight.[1] On appeal from the denial of a directed verdict, we must view the evidence in the light most favorable to the State. If any direct evidence or substantial, circumstantial evidence tending to prove the accused's guilt exists, we must conclude the trial court properly submitted the case to the jury.[2]

Dixon argues that because Victim let her in his home on sight, she did not enter without consent, and thus cannot be guilty of first degree burglary. We disagree.

A person commits first degree burglary through the non-consensual entry of a dwelling with the intent to commit a crime therein if one or more statutorily defined aggravating

---

1. *In the Interest of Cisco K.,* 332 S.C. 649, 506 S.E.2d 536 (Ct.App. 1998).

2. *State v. Kelsey,* 331 S.C. 50, 502 S.E.2d 63 (1998).

circumstances are present.[3] The phrase "enters a building without consent" is defined as "to enter a building by using deception, artifice, trick, or misrepresentation to gain consent to enter from the person in lawful possession." [4]

Viewing the facts in the light most favorable to the State, Dixon gained entry into the victim's house because Victim and she were past acquaintances. Dixon, aware of Victim's deafness, knew he would allow her entry on sight because he had done so in the past whenever she sought money from him. Dixon knew she and Victim communicated through the writing of notes, usually done inside the house. Thus, on January 7, 1997, Dixon knew if she showed up at Victim's house, she would at least gain entry into the house to explain why she was there. Her intentions, however, were not to gain entry so she could ask for money as she had done in the past, but to gain entry so she could distract Victim long enough to provide access for her co-conspirators to rob him.

Because "entering without consent" is statutorily defined to include entering through deceit, trickery, artifice, or misrepresentation, and there was sufficient evidence for a jury to find that Dixon did enter through such means, the trial judge properly refused her motion for a directed verdict.[5]

**AFFIRMED.**

CONNOR and ANDERSON, JJ., concur.

---

3. S.C.Code Ann. § 16–11–311(A) (Supp.1998).

4. S.C.Code Ann. § 16–11–310(3)(b) (Supp.1998). The American Heritage Dictionary defines deception as "the use of deceit, the fact or state of being deceived." Artifice is defined as "subtle but base deception." Trick or trickery is defined as "[a] device or action designed to achieve an end by deceptive or fraudulent means" or "deception by stratagem." Misrepresentation is defined as "[t]o give an incorrect or misleading representation of." AMERICAN HERITAGE DICTIONARY (2nd ed. 1985).

5. Because we conclude there is sufficient evidence for a jury to find Dixon entered the dwelling through deception, artifice, trick, or misrepresentation, we do not address the issues of accomplice liability or the "hand of one, the hand of all" theory of liability.