478 S.E.2d 861

**The STATE, Respondent,**

v.

**George LEWIS, Appellant.**

**No. 2590.**

Court of Appeals of South Carolina.

Heard Sept. 10, 1996.

Decided Oct. 29, 1996.

Rehearing Denied Dec. 23, 1996.

540

Jack B. Swerling, Columbia, for appellant.

Attorney General Charles Molony Condon, Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, Assistant Attorney General G. Robert DeLoach, III, Columbia; and Solicitor Walter M. Bailey, Jr., Summerville, for respondent.

## PER CURIAM:

Appellant George Lewis was indicted on sixteen molestation charges involving six children for events arising out of his involvement with the Briar Patch daycare center which he and his wife owned and operated. He was ultimately found guilty on two of the charges as to only one child, Cory Schmidt. The court imposed consecutive sentences on the convictions: ten years for lewd act upon a minor and thirty years for assault

with intent to commit first degree criminal sexual conduct with a minor. We reverse and remand for a new trial.

## I.

During pre-trial motions the lower court qualified a social worker, Coles Badger, as an expert in the field of assessing and treating child sexual abuse. The State also moved under S.C.Code Ann. § 16–3–1530(G) (1985) to have the child witnesses testify via videotape, or alternatively, in court outside of Lewis's presence. The trial court ruled that the six alleged victim-witnesses would give their testimony via closed circuit television (CCTV) outside court and outside of Lewis's presence.

At the close of the State's case, Lewis was granted directed verdicts on six indictments involving two children (one child did not testify and another child's testimony was incompetent). The jury later found Lewis not guilty on eight indictments involving three children, but found him guilty on the remaining two charges concerning Cory Schmidt.

## II.

Lewis raises six issues on appeal. We need to address only one issue however, because we agree that his Sixth Amendment Confrontation Clause rights "to be confronted with the witnesses against him" were violated by the trial court's decision to apply S.C.Code Ann. § 16–3–1530(G) (1985) in permitting Cory Schmidt to testify via CCTV outside his presence.

### A.

In support of its motion to have the children testify outside of court, the solicitor stated that "the court must find on each individual child that a situation exists to require" special treatment. Similarly, Lewis's trial counsel stated that he would not agree to testimony outside open court and outside of Lewis's presence, "without the court making specific findings of fact as to each child."

The State's expert testified that Lewis's presence would further aggravate the trauma that the children could suffer by

testifying in open court. She also stated that she had seen or examined five of the six victims, and after testifying about each particular child, she believed that all five would be traumatized by testifying in the courtroom in front of Lewis. The court then took the testimony of the six alleged victims and one fact witness outside of Lewis's presence. The court stated that its "preliminary impressions" were that three children might need to be videotaped, but the other four (three alleged victims and one fact witness) were "competent to testify" and could "clearly come to court and articulate whatever they've got to say." The court included Cory Schmidt in this second group. The State asked whether Lewis would be allowed to remain present during the testimony of these latter four children. The court responded that if he was "going to eliminate the defendant from being here for any of the testimony" he would "eliminate him for all of it. . . . I think for consistency and for the jury's sake, . . . whatever the ruling is, it probably needs to be consistent as to all the children in all circumstances." Lewis's counsel objected, arguing that consistency was an improper basis for the court's ruling, and case-by-case determinations were still required. Lewis's trial counsel further contended that the State failed to meet its burden as movant. The court then recalled Badger to the witness stand, and she stated she was "still of the opinion that none of the children will be able to testify in front of the defendant."

Following Badger's testimony, the court found that all of the children were competent to testify. The court ruled that the one child fact witness should testify in open court, while the six alleged victims would give their testimony on CCTV outside of Lewis's presence. The court explained its ruling, stating in pertinent part:

> I think this serves both the needs of the defendant to confront the witnesses against him, but you also have to balance in that formula the well being of the children and their mental status, particularly the testimony from Ms. Badger in regard to the trauma that they would all potentially experience from testifying in open court. Clearly, that harm is substantial. The potential harm is substantial. And they need to be protected in regard to that, but also the defendant's right to confront the accusers needs to be

protected also.... [t]he children will not risk the further exposure to any further trauma of being brought into the courtroom with the defendant here; so that's the ruling of the court.

The closed circuit television procedure was set up with each child witness, the judge, the court reporter, two solicitors, Lewis's attorney, the investigating officer, the victim's advocate, and a SLED agent/camera operator, seated in the grand jury room. The jury viewed the live testimony by a monitor. Lewis also viewed the testimony by monitor and was in constant audible contact with his attorney during the testimony.

### B.

S.C.Code Ann. § 16-3-1530(G) (1985) provides in pertinent part that, a court "shall treat 'special' witnesses sensitively, using closed or taped sessions when appropriate." The following procedure should be followed in applying the statute:

[f]irst, the trial judge must make a case-specific determination of the need for videotaped testimony. In making this determination, the trial court should consider the testimony of an expert witness, parents or other relatives, other concerned and relevant parties, and the child. Second, the court should place the child in as close to a courtroom setting as possible. Third, the defendant should be able to see and hear the child, should have counsel present both in the courtroom and with him, and communication should be available between counsel and appellant.

*State v. Murrell*, 302 S.C. 77, 80–81, 393 S.E.2d 919, 921 (1990).

The United States Supreme Court faced a nearly identical situation as the one at issue in this case. In *Maryland v. Craig*, 497 U.S. 836, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990), the Court ruled that the Confrontation Clause of the Sixth Amendment does not categorically prohibit a child witness in a child abuse case from testifying against a defendant at trial, outside the defendant's physical presence, by one-way closed circuit television. While the face-to-face requirement is not absolute, it can be dispensed with only if "necessary to further an important public policy and only where the reliability of the

testimony is otherwise assured." *Id.* at 850, 110 S.Ct. at 3166. Moreover, a "State's interest in the physical and psychological well-being of child abuse victims may be sufficiently important to outweigh, at least in some cases, a defendant's right to face his or her accusers in court." *Id.* at 853, 110 S.Ct. at 3167. If the state makes an adequate showing of necessity, the state interest in protecting child witnesses from the trauma of testifying in a child abuse case is sufficiently important to justify the use of a special procedure that permits the child witness to testify at trial in the absence of a face to face confrontation with the defendant. *Id.* at 855, 110 S.Ct. at 3168–69. Furthermore,

> [t]he requisite finding of necessity must of course be a case-specific one: The trial court must hear evidence and determine whether use of the one-way closed circuit television procedure is necessary to protect the welfare of the particular child witness who seeks to testify.... The trial court must also find that the child witness would be traumatized, not by the courtroom generally, but by the presence of the defendant.... Denial of face-to-face confrontation is not needed to further the state interest in protecting the child witness from trauma unless it is the presence of the defendant that causes the trauma. In other words, if the state interest were merely the interest in protecting child witnesses from courtroom trauma generally, denial of face-to-face confrontation would be unnecessary because the child could be permitted to testify in less intimidating surroundings, albeit with the defendant present. Finally, the trial court must find that the emotional distress suffered by the child witness in the presence of the defendant is more than *de minimis, i.e.,* more than mere nervousness or excitement or some reluctance to testify. *Id.* at 856–57, 110 S.Ct. at 3169–70 (citations omitted).

*Craig* did not alter the *Murrell* analysis but instead further amplified its first prong: a trial court's decision must be based on the case-specific finding that the use of an alternative procedure is necessary to prevent a particular child from the trauma of testifying in the defendant's presence. Only then can a state's compelling interest outweigh a defendant's Constitutional guarantee of the right to confront the witnesses against him.

## C.

■ Lewis challenges only the trial court's application of *Murrell*'s first prong. The issue therefore, is whether the trial court made the required case-specific finding of necessity, and if so, whether the decision was an abuse of discretion. *See State v. Murrell,* 302 S.C. 77, 393 S.E.2d 919 (1990) (trial court's decision to use alternative procedure reviewed under abuse of discretion standard).

■ Lewis argues that the trial court's final ruling does not reflect a case-specific finding of necessity, but instead was based on an "all or nothing" rule for the sake of consistency. In its final ruling, the trial court did not specifically find that Cory Schmidt in particular, or any other individual child, would be traumatized by testifying in Lewis's presence. Though the court specifically named the six individual victims when it ruled that each would testify via CCTV, it merely referred to the children collectively when it discussed the harm and trauma of testifying in open court in Lewis's presence. While there is no requirement that a trial court's finding contain magic words in order to satisfy the Confrontation Clause, at a minimum, under *Craig,* a trial court should at least convey that the alternative procedure is necessary to protect a *particular* child from being traumatized by testifying in the defendant's presence. Thus, the better practice is for trial courts to be more specific in indicating the evidentiary basis supporting a ruling on necessity as to each particular child. This will enable a reviewing court to determine whether "the trial court has made the type of individualized determination of necessity required by *Maryland v. Craig." Hopkins v. State,* 632 So.2d 1372, 1376 (Fla.1994) (trial court merely adopted and ratified the hearing testimony of the mother and psychiatrist without specifying each evidentiary fact that supported its ruling). However, though the lower court's ruling should have been more specific and particularized, we find no error. The court did find that the group of six children, of which Cory Schmidt was a member, would be traumatized by testifying in Lewis's presence in open court.

■ Lewis next contends that because: (1) the expert neither examined nor offered testimony as to Cory Schmidt, (2) the child's own testimony indicated that she could testify in

front of Lewis without being traumatized, and (3) because the trial judge's first-hand impressions were that she was competent and could testify in front of Lewis, the lower court's finding of necessity lacks evidentiary support and, was therefore, an abuse of discretion. We agree.

Despite the court's reference to Coles Badger in its final ruling, it is clear that the court did not consider her expert opinion testimony as to Cory Schmidt. The first time she testified the State directed Badger to limit her "testimony to specifically the opportunities [she] had to observe each one of" the children she had treated. These children did not include Cory Schmidt. After Badger observed the children testify and was recalled to the witness stand, the trial court asked her opinion about three of the children he had previously felt were competent to testify (Page Hill, Brandon Hill, and Cory Schmidt). Badger stated that "[f]irst your honor, I never did see Cory Schmidt, so I have nothing to compare her to." The court responded with "that's right," and Badger continued, "[s]o I probably shouldn't speak on her." The court asked Badger, "[b]ut will they still be able to articulate what happened to them without the defendant present then in the courtroom setting. Those three I'm talking about?" Lewis's trial counsel objected: "I just wanted to make sure, you are going to allow her to give opinions on children that she's never seen or examined?" The court responded, "[n]o, she's not giving opinion on the Schmidt child. She said she couldn't in regard to that." The court stated that it wanted an opinion on only the two Hill children. In short, the record reveals that the State asked Badger to testify only about the children she treated, Badger herself stated that she "probably shouldn't speak" as to Cory Schmidt, defense counsel objected to any testimony concerning Cory Schmidt, and finally, the trial court stated that Badger was not giving an opinion on Cory Schmidt. Accordingly, Badger's testimony cannot be used to support the court's ruling as to Cory Schmidt.

The State asserts that Badger did offer at least general testimony on Cory Schmidt, and therefore, there is adequate evidence to support the court's ruling. We disagree. Badger never treated or examined Cory Schmidt, and whatever testimony she may have offered as to this individual child, cannot, by itself, satisfy *Craig*'s case-specific requirement. *See Unit-*

*ed States v. Garcia,* 7 F.3d 885, 889 (9th Cir.1993) (sole reliance on testimony of expert who never treated or examined the child would violate *Craig*'s case-specific requirement).

Therefore, the evidence supporting the court's ruling to have Cory Schmidt testify via CCTV was based only on Cory Schmidt's own testimony. The State argues that her testimony alone is a sufficient basis for a finding of necessity. The State points to her testimony that she felt "good" on the witness stand, but she would feel "kind of bad" (but not "really bad") if Lewis had been present. She stated she would be scared to talk about "private things" if Lewis was present. Cory agreed it would make her nervous or uncomfortable to have Lewis present. This evidence however, is insufficient to support the trial court's ruling.

First, Cory Schmidt's overall testimony does not meet *Craig*'s requirement that a child's trauma from testifying in court in the defendant's presence must be more than *de minimis*. *See, e.g., Lewis v. State,* 626 So.2d 1073 (Fla.Dist. Ct.App.1993) (mother's and child's testimony insufficient, and, at most, showed that child would be frightened if she were required to testify in the presence of the defendant). On cross-examination Cory Schmidt indicated that she had been enjoying giving testimony, and she could tell the truth with the attorneys present and before the jury. Importantly, she stated that she could testify in Lewis's presence.

Second, a child's testimony, alone and without more, has heretofore not been the sole basis in support of a finding of necessity. In *Craig* the Supreme Court expressly rejected a bright-line test for the quantum of evidence that a state must produce to meet its burden: "we decline to establish, as a matter of federal constitutional law, any such categorical evidentiary prerequisites for the use of the one-way television procedure." *Id.* at 860, 110 S.Ct. at 3171. South Carolina's approach, as articulated in *State v. Murrell,* 302 S.C. 77, 393 S.E.2d 919 (1990), is consistent with *Craig*. *Murrell*'s listing of the types of testimony to be considered is the recommended but not absolute method for how a trial court should approach this evidentiary question.[1] Several decisions, both before and

---

1. In the wake of *Craig,* Congress passed an analogue to the statute at issue, which in part, 18 U.S.C.A. § 3509(b)(1)(B)(ii) (West Supp.1996),

after *Craig* and *Murrell,* have examined the evidentiary sufficiency underlying a trial court's finding of necessity. *See, e.g., Starnes v. State,* 307 S.C. 247, 414 S.E.2d 582 (1991) (treating psychiatrist's testimony and child's testimony sufficient); *State v. Lopez,* 306 S.C. 362, 412 S.E.2d 390 (1991) (sufficient evidence where the trial court considered a letter from a psychologist, solicitor testified about another psychologist's opinion, and court personally interviewed children); *State v. Rogers,* 293 S.C. 505, 362 S.E.2d 7 (1987) (trial court's general remarks about children feeling uncomfortable testifying in open court in these types of cases were insufficient). *Accord State v. West,* 313 S.C. 426, 438 S.E.2d 256 (Ct.App.1993) (sufficient evidence to order alternative procedure where trial court relied on treating psychologist's testimony and personally interviewed child); *State v. Camele,* 293 S.C. 302, 360 S.E.2d 307 (1987) (trial court's sole reliance upon solicitor's assertions, rather than its own personal observations, was insufficient). While none of our precedents explicitly hold that a child's testimony, alone and without more is legally insufficient, or conversely, may be sufficient under certain circumstances, our review reveals no case where the State met its

---

requires expert testimony to support a finding of trauma. However, such testimony may be sufficient evidence, by itself, to satisfy the federal statute and the Confrontation Clause. *See generally United States v. Boyles,* 57 F.3d 535 (7th Cir.1995); *United States v. Quintero,* 21 F.3d 885 (9th Cir.1994); *United States v. Garcia,* 7 F.3d 885 (9th Cir.1993); *United States v. Carrier,* 9 F.3d 867 (10th Cir.1993), *cert. denied,* 511 U.S. 1044, 114 S.Ct. 1571, 128 L.Ed.2d 215 (1994); *United States v. Farley,* 992 F.2d 1122 (10th Cir.1993). Other states follow an approach similar to South Carolina's and apply *Craig* in a flexible manner, whereby a treating or examining expert's testimony is strongly suggested, though is not necessarily a minimum evidentiary requirement. *See, e.g., Matter of Vanidestine,* 186 Mich.App. 205, 463 N.W.2d 225 (1990) (treating counselor's and parent's testimony sufficient); *State v. Crandall,* 120 N.J. 649, 577 A.2d 483 (1990) (expert testimony not minimum evidentiary requirement and mother's and child's testimony was sufficient); *Hightower v. State,* 822 S.W.2d 48 (Tex.Crim.App. 1991) (treating expert's opinion and testimony of prosecutor experienced in child abuse cases were sufficient). *See also Spigarolo v. Meachum,* 934 F.2d 19 (2nd Cir.1991) (testimony of treating psychiatrist, another expert who had never treated or examined the child, the child's father, and the child's stepmother, was sufficient); *Thomas v. Gunter,* 962 F.2d 1477 (10th Cir.1992) (testimony of each child's therapist was found sufficient).

burden by relying solely on a child's testimony. The same holds true with the foreign precedents which we have cited.

Third, and most importantly, the State asks this Court to make findings on the cold record presented, when the trial judge, who saw and heard Cory Schmidt himself, explicitly stated that she was competent and could testify in court. He also included Cory in the group of children he felt could testify in front of Lewis, "I think that probably those children could get through it with him here." It is clear from our case law that a trial judge's first-hand observations and impressions of a child, whether through testimony, interviewing, or otherwise, are not only required when possible, but carry great weight in the evidentiary sufficiency question. *See, e.g., State v. Lopez*, 306 S.C. 362, 366, 412 S.E.2d 390, 392–93 (1991) ("Although the oldest child denied fear, the trial judge also had the benefit of observing both children and their demeanor," and based on other evidence, the judge could find that children would be traumatized by testifying in front of the defendant.).[2]

Finally, the State correctly points out on brief that regardless of the court's consistency concerns, the "central inquiry is whether a sufficient factual basis supported the ruling." Considerations of consistency are not evidence nor can they outweigh confrontation rights.

Therefore, because the trial court's finding that it was necessary to have Cory Schmidt testify outside of Lewis's presence was without evidentiary support, Lewis's Sixth Amendment Confrontation Clause rights were violated.

### D.

The violation of the Sixth Amendment right to confrontation is not a *per se* reversible error. *State v. Graham*, 314 S.C. 383, 386, 444 S.E.2d 525, 527 (1994) (citations omitted). The *Graham* court cited *Delaware v. Van Arsdall*, 475

---

2. The State also attempts to meet its burden by coupling two pieces of evidence which are otherwise insufficient by themselves: the expert's purported general testimony about Cory Schmidt, plus the child's testimony itself. We need not address this argument however, because as previously stated, the record does not bear out that this evidence can be so used.

U.S. 673, 684, 106 S.Ct. 1431, 1438, 89 L.Ed.2d 674 (1986), for the appropriate standard for review of Confrontation Clause violations:

> Whether such an error is harmless in a particular case depends upon a host of factors.... These factors include the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on the material points, the extent of cross-examination otherwise permitted, and of course, the overall strength of the prosecution's case.

*Graham* at 386, 444 S.E.2d at 527. Moreover, this harmlessness determination "cannot include consideration of whether the witness' testimony would have been changed, or the jury's assessment unaltered, had there been confrontation; such an inquiry would obviously involve pure speculation, and harmlessness must therefore be determined on the basis of the remaining evidence." *Coy v. Iowa*, 487 U.S. 1012, 1021–22, 108 S.Ct. 2798, 2803–04, 101 L.Ed.2d 857 (1988).

■ Cory Schmidt's testimony was not merely cumulative, but was the heart of the State's case against Lewis on the two charges involving her. Cory testified that something happened with her privates in the den of the Briar Patch, a room where the children napped and played. She stated there was a rocking chair where Lewis would rock her and other children. Cory testified when she was on Lewis' lap, he would touch her privates back and forth with his hand. She stated Lewis would touch her on the outside of her panties. Cory stated this happened "sometimes" and it made her mad. Although Lewis was given the chance to cross-examine this child, that does not end the inquiry. Other than Cory Schmidt's testimony, the State presented only the child's mother. While this Court is not permitted to weigh the evidence, even the most liberal view of the mother's testimony provides neither direct nor circumstantial evidence that Lewis abused Cory Schmidt.[3] Conversely, through his own testimo-

---

3. The mother did not notice any behavioral changes in her daughter while she attended the Briar Patch. After questioning Cory when she first learned of the allegations, the mother had no concerns. Nor did she have any concerns after she took Cory to DSS for an interview. In October 1993, the mother developed concerns after a conversation with

ny and that of his five witnesses, Lewis offered direct and circumstantial evidence refuting Cory's Schmidt's account. In light of the *Graham* factors, and because this Court cannot speculate on the hypothetical effect that Cory Schmidt's testimony might have carried, had she testified before Lewis in open court, we find that the evidence is insufficient to support a conviction. Therefore, we agree with Lewis that he was prejudiced by not being given the opportunity to a face-to-face confrontation when his accuser testified against him.

### III.

Lewis's Sixth Amendment Confrontation Clause rights were violated. The court's finding that it was necessary to have Cory Schmidt to testify outside of court and Lewis's presence to avoid trauma was not supported by the evidence. This error was not harmless. Therefore, the judgment below is

**REVERSED and REMANDED.**

HOWELL, C.J., and HEARN and STILWELL, JJ., concur.

---

Cory. The mother testified that, at the time of trial, Cory was "doing good," and with respect to her school work and behavior, "she's just not paying attention and not listening."