506 S.E.2d 536

**In the Interest of CISCO K., a Minor under the age of Seventeen Years, Appellant.**

**No. 2899.**

Court of Appeals of South Carolina.

Submitted Sept. 1, 1998.

Decided Oct. 12, 1998.

650

Senior Assistant Appellate Defender, Wanda H. Haile of the South Carolina Office of Appellate Defense, of Columbia, for appellant.

Attorney General Charles Molony Condon; Deputy Attorney General John W. McIntosh and Assistant Deputy Attorney General Salley W. Elliott; and Solicitor W. Barney Giese, all of Columbia, for the respondent.

HUFF, Judge:

Cisco K., a minor, appeals his adjudication of guilty of first degree criminal sexual conduct with a minor. The family court sentenced Cisco to commitment with the Department of Juvenile Justice for an indeterminate period, not to exceed his twenty-first birthday. Cisco challenges the family court's denial of his motion for a directed verdict. He also argues the court erred in allowing the alleged victim to give her testimony via closed circuit television outside Cisco's presence. We affirm.

## FACTS

On November 15, 1995, the four-year-old victim was playing "hide-and-go-seek" with her cousins at their grandmother's house. Cisco asked the victim to accompany him to his room. According to the victim, once they were in his room, Cisco "laid" on her and "did it" in her front and back. She also testified that he put his private part inside her, that it hurt, and that she knew it was his private part because she had seen it.[1]

In addition to the victim's testimony, the State presented the testimony of other children who were in the house at the time of the incident. They testified that they saw Cisco on top of the victim and that Cisco and the victim had their pants down. One of these children also testified that Cisco and the victim were "doing it" and that prior to leading the victim to his room, Cisco stated he was going to "do it" with the victim.

Following the incident, the victim's mother and grandmother took the victim to the hospital, where Dr. Brian Kline examined her. Although unable to conclude that the victim had been penetrated, Dr. Kline testified he observed a perianal tear on the victim that was red and swollen.

The State charged Cisco with first degree criminal sexual conduct with a minor. Prior to Cisco's trial on this charge, the State moved to present the testimony of the victim via

---

1. While admitting to playing "hide-and-seek" with the other children, Cisco denied that he was ever alone with the victim that day or that he ever touched her.

closed circuit television (CCTV) pursuant to S.C.Code Ann. § 16–3–1530(G) (1985).[2]

The family court held a hearing to determine whether the victim should be allowed to testify in this manner. The State presented the testimony of Dr. Carole Watson, a child therapist who treated the victim on eighteen separate occasions following the incident.

Dr. Watson testified that after the incident occurred, the victim experienced regular nightmares, fear of being killed, difficulty sleeping alone, waking up and crying in the night, and high anxiety in and out of the treatment sessions. In addition, Dr. Watson noted that on several occasions, the victim stated she never wanted to see Cisco again, wanted to beat him up, and would like to see him in jail.

From her sessions with the victim, Dr. Watson developed the opinion that the victim was afraid of Cisco and that seeing Cisco again would have the effect of retraumatizing her. Dr. Watson also stated that if the victim were to testify in front of Cisco and in a courtroom full of strangers, her ability to be forthcoming about what happened would be inhibited.

Cisco objected to the State's request to present the victim's testimony via closed-circuit television on the ground that the State failed to present sufficient evidence to warrant the invocation of the closed-circuit television procedure. The family court, however, granted the State's motion.

## LAW/ANALYSIS

### A. DIRECTED VERDICT

Cisco contends that the trial court erred in denying his motion for a directed verdict of acquittal because there was insufficient evidence that Cisco committed sexual battery.

When a motion for a directed verdict is made in a criminal case, the trial court is concerned with the existence or non-existence of evidence, not its weight. *State v. Long*, 325 S.C.

---

2. Although section 16–3–1530(G) has since been amended out of section 16–3–1530, the amendment became effective after this lawsuit arose. *See* S.C.Code Ann. Section 16–3–530, History (making October 1, 1997, the effective date of the 1997 amendment).

59, 480 S.E.2d 62 (1997). If there is any direct or substantial circumstantial evidence which reasonably tends to prove the guilt of the accused, refusal by the trial court to direct a verdict is not error. *Long; State v. Williams,* 321 S.C. 327, 468 S.E.2d 626 (1996). On appeal from the denial of a motion for directed verdict, this court must view the evidence in a light most favorable to the State. *State v. Childs,* 299 S.C. 471, 385 S.E.2d 839 (1989).

■ Here, the State presented sufficient evidence of criminal sexual conduct with a minor to support the trial judge's denial of the directed verdict motion. Under S.C.Code Ann. § 16–3–655(1) "[a] person is guilty of criminal sexual conduct in the first degree [with a minor] if the actor engages in sexual battery with a victim who is less than eleven years of age." S.C.Code Ann. § 16–3–655(1) (1985). S.C.Code Ann. § 16–3–651(h) defines sexual battery as "sexual intercourse ... anal intercourse, or any intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of another person's body ..." S.C.Code Ann. § 16–3–651(h) (1985).

At trial, the victim testified extensively about Cisco's actions, claiming that he did something "bad;" it was painful when he put his private part inside her; she knew he put his private part inside her because she saw it; and, before he did this, he put something on that looked like a rubber band, but was not. In addition, other children in the home at the time of the incident testified that they saw Cisco on top of the victim and that Cisco and the victim had their pants down. The treating physician also testified that he observed a perianal tear on the witness, which was red and swollen. Clearly, this evidence was sufficient to support the trial judge's denial of the directed verdict motion. See *State v. Mathis,* 287 S.C. 589, 340 S.E.2d 538 (1986) (trial judge properly denied motion for directed verdict where there was evidence of intrusion).

## B.  CCTV TESTIMONY

■ Cisco also contends the family court erred in allowing the State to present the victim's testimony via closed-circuit television because the decision was based solely on the testimony of Dr. Watson. This evidence, Cisco argues, was insuffi-

cient to support the State's motion to allow the victim to testify in this manner.

In *State v. Murrell* our supreme court adopted the following guidelines to be used when determining whether to allow a victim to testify via closed-circuit television or videotape:

First, the trial judge must make a case-specific determination of the need for videotaped testimony. In making this determination, the trial court should consider the testimony of an expert witness, parents or other relatives, other concerned and relevant parties, and the child. Second, the court should place the child in as close to a courtroom setting as possible. Third, the defendant should be able to see and hear the child, should have counsel present both in the courtroom and with him, and communication should be available between counsel and appellant ... A decision as to whether to utilize a videotape procedure is subject to reversal only if it is shown that the trial judge abused his discretion in making such a decision or failed to follow the appropriate procedure upon deciding that a witness was entitled to special protection.

*State v. Murrell,* 302 S.C. 77, 80–82, 393 S.E.2d 919, 921–922 (1990).

While the court in *Murrell* did not mandate that the trial court personally interview the victim in making its determination, it did suggest that the trial court conduct such an interview "in addition to receiving expert testimony." *Murrell* at 81 n. 2, 393 S.E.2d at 921 n. 2. As this court noted in *State v. Lewis,* 324 S.C. 539, 548, 478 S.E.2d 861, 866 (Ct.App.1996) (noting *Murrell*'s consistency with *Maryland v. Craig,* 497 U.S. 836, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990)), "*Murrell*'s listing of the types of testimony to be considered is the recommended but not absolute method for how a trial court should approach this evidentiary question."

In the present case, the family court relied on the testimony of the expert witness, who conducted eighteen treatment sessions with the victim. We find, based on the strength of the expert's testimony, that the family court judge did not err in relying solely on the testimony of the expert. The expert had substantial experience dealing with the victim. The expert's testimony was not generalized, and related specifically

to the victim's reaction to Cisco. The expert stated the victim would be "unlikely ... [to] talk at all" in the presence of Cisco. The court clearly made a case-specific determination of the necessity of having the victim testify via closed-circuit television. The court was in the best position to determine what testimony was necessary in making her decision. The testimony constituted a sufficient basis for the trial judge's finding.

**AFFIRMED.**

GOOLSBY and HOWARD, JJ., concur.