535 S.E.2d 636

**The STATE, Petitioner,**

v.

**Gary Douglas BRAY, Respondent.**

No. 25176.

Supreme Court of South Carolina.

Heard April 19, 2000.
Decided July 31, 2000.
Rehearing Denied Aug. 18, 2000.

24

Attorney General Charles M. Condon, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, Senior Assistant Attorney General Norman Mark Rapoport, all of Columbia, and Solicitor Walter M. Bailey, Jr., of Summerville, for petitioner.

Peter F. Them, II, of Summerville, for respondent.

WALLER, Justice:

We granted a writ of certiorari to review the Court of Appeals' opinion in *State v. Bray*, 335 S.C. 514, 517 S.E.2d 714 (Ct.App.1999). We affirm in result only.

## FACTS

The facts, as set forth in the Court of Appeals' opinion, are as follows:

Bray is the uncle of the alleged child victim in this case. The child and her mother, who is Bray's sister, often spent weekends at the child's maternal grandmother's home in 1995 and early 1996. Bray lived in the grandmother's home.

The child, who was five at the time of the alleged abuse and seven at the time of trial, testified that she often played with Bray in his room when she stayed at her grandmother's house. The child's mother stated her daughter loved to play with Bray in his room, that they would often play until bedtime, that Bray's door would be closed while they played, and that sometimes it would be locked.

The child testified that Bray touched her in a bad way. She testified he touched her "pee pee" and her "bottom" with his finger and his tongue, and Bray had .her rub his "front private." She stated she wet her hands in the bathroom adjoining Bray's bedroom and would then rub his penis. She testified that "we had to keep on doing it and doing it and doing it until this white stuff came out." Afterward, she remembers Bray wiped the "white stuff" onto a clean t-shirt.

Bray admitted owning three pornographic magazines. The child testified he showed her the magazines, and she remembered seeing "white stuff" on one woman's belly. Bray, on the other hand, testified that the child was naturally inquisitive and would "go through about anything she wanted to go through." One day he entered his bedroom and found her looking at the magazines, which he kept under his bed. He attempted to answer the child's questions about the pictures, including a question about the "white stuff," and hoped that would end the situation. He knew there would be trouble if the child's grandmother discovered he had pornographic magazines in the house.

335 S.C. at 517–18, 517 S.E.2d at 716.

Prior to trial, the State moved to have the victim testify via closed-circuit television (CCTV), out of the presence of Bray and the jury. After a hearing, the trial court ruled this was a

"classic case" of why S.C. Ann. § 16-3-1550(E)(Supp.1999)[1] was passed and ordered the victim be permitted to testify via live closed-circuit television without Bray or other relatives (except her mother) present. The Court of Appeals reversed.

## ISSUE

Were the trial court's factual findings regarding the necessity for the child to testify via CCTV supported by sufficient evidence?

## DISCUSSION

The Court of Appeals ruled "the trial court's factual finding regarding the necessity for the child to testify via CCTV was not supported by sufficient evidence." 335 S.C. at 519, 517 S.E.2d at 717. We disagree.

A trial court's decision to allow videotaped or closed-circuit testimony is reversible "only if it is shown that the trial judge abused his discretion in making such a decision..." *State v. Murrell*, 302 S.C. 77, 82, 393 S.E.2d 919, 922 (1990). Where there is evidence to support a trial court's ruling, it will not be overturned for an abuse of discretion. *State v. Morgan* 326 S.C. 503, 485 S.E.2d 112 (Ct.App.1997).

In the present case, the expert testimony came from Kim Charpia who was offered and qualified as an expert in the field of counseling services for victims of child sexual abuse.[2] Charpia held a masters degree in social work, and had worked

---

1. Section 16-3-1550(E) provides, "[t]he circuit or family court must treat sensitively witnesses who are very young, elderly, handicapped, or who have special needs by using closed or taped sessions when appropriate. The prosecuting agency or defense attorney must notify the court when a victim or witness deserves special consideration." This section was formerly codified at S.C.Code Ann. § 16-3-1530(G) (1985).

2. The Court of Appeals discounted Charpia's testimony, holding "[she] was not an expert in child sexual abuse..." 335 S.C. at 524, 517 S.E.2d at 719. On the contrary, Charpia was in fact qualified as an expert in counseling victims of child sexual abuse. As the issue of Charpia's qualification was not raised on appeal, the Court of Appeals erred in reweighing her qualifications and her credibility. *Cf. Summersell v. South Carolina Dep't of Public Safety*, 337 S.C. 19, 522 S.E.2d 144 (1999) (it is error for appellate court to consider issue which is not properly before it).

for 8 years at Naval Family Services, during which time she had seen a minimum of 25 cases per year of child victims of sexual abuse. Although Charpia was not currently specializing in child sexual abuse, she felt she could be considered an expert in that area by virtue of her training. Charpia testified she saw the victim 8 times between April 22, 1996 and July 22, 1996 for symptoms of depression. The victim had also suffered nightmares, and insisted upon wearing pants to school underneath her school uniform. When asked whether, in her opinion, the victim would be able to testify in open court in front of the defendant, Charpia replied:

> I think in general it would be difficult for her to be in here with all these adults.... But, I think **in particular** she would be facing her uncle, a family member, and grandparents, and they have not believed her statement. I think she will shut down and not talk at all. I think she would be overwhelmed and intimidated and probably unable to talk with anybody. (emphasis supplied).

When asked if the victim should testify in open court in front of the accused, Charpia stated, **"I think if she faces the accused, you may not get any testimony."** When asked if testifying in front of the accused would have a positive or negative effect on the victim, Charpia responded, "[i]t would do further negative emotional harm." Although Charpia's testimony was, in part, based upon the impact to the victim by being required to testify in front of **family**, it was also directed at the harm to victim by testifying in the presence of Bray, and indicated that if forced to do so, the victim would be unable to communicate.

Similarly, the victim's mother testified she did not feel the victim could testify in court and that, if required to testify in front of her uncle Gary, "she's not going to say anything in front of him because she loves him, even though she hates him for what he did to her." The mother also testified that she believed the victim may have been intimidated by Bray, and was glad when her mother told her Bray would not be there when she testified.

Given the above testimony demonstrating the victim would be traumatized by testifying in Bray's presence, we disagree with the Court of Appeals' conclusion that there was insuffi-

cient evidence to support use of CCTV. *See State v. Corn*, 224 S.C. 74, 77 S.E.2d 354 (1953) (it is for trial court, not appellate court to weigh evidence, subject to abuse of discretion standard of review).[3]

■ However, although we disagree with the Court of Appeals' assessment of the evidence in this case, we nonetheless affirm in result due to the trial court's failure to make the case-specific findings mandated by our opinion in *Murrell, supra*, and the United States Supreme Court's opinion in *Maryland v. Craig*, 497 U.S. 836, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990).

■ In *Murrell*, 302 S.C. at 81, 393 S.E.2d at 921, we adopted the following procedure to be used by trial courts in attempting to protect child witnesses:

First, the trial judge must make a **case-specific determination** of the need for videotaped testimony. In making this determination, the trial court should consider the testimony of an expert witness, parents or other relatives, other concerned and relevant parties, and the child. (emphasis supplied).[4]

Although conceding the trial court here "did not specifically state there would be harm to the victim if she was required to testify in the presence of the her uncle," the dissent nonetheless asserts the judge found a case-specific necessity in this

3. Moreover, the Court of Appeals' distinctions of *In re Cisco K.*, 332 S.C. 649, 506 S.E.2d 536 (Ct.App.1998) and *State v. Lopez*, 306 S.C. 362, 412 S.E.2d 390 (1991) are tenuous, at best. When the facts of those cases are thoroughly examined, it is patent that the showings of necessity there were no greater than the present showing.

4. Contemporaneous with our decision in *Murrell*, the United States Supreme Court in *Maryland v. Craig*, 497 U.S. 836, 856–57, 110 S.Ct. 3157, 3169–70, 111 L.Ed.2d 666 (1990), stated:

[t]he **requisite finding of necessity must of course be a case-specific one**: The trial court must hear evidence and determine whether use of the one-way closed circuit television procedure is necessary to protect the welfare of the particular child witness who seeks to testify.... **The trial court must also find that the child witness would be traumatized, not by the courtroom generally, but by the presence of the defendant....** the trial court must find that the emotional distress suffered by the child witness in the presence of the defendant is more than de minimis, i.e., more than mere nervousness or excitement or some reluctance to testify. (emphasis supplied).

case, based upon the colloquy of the solicitor prior to the court's ruling. We simply cannot conclude on the present record that this was the basis of the trial court's ruling. The court stated:

> I think this is probably a classic case of why that last part of 16–3–1530, I think, was passed. **We've got a young child who it's alleged has been molested at the age of five and who is seven years of age now.** We've got testimony from the mother and the expert which shows that except for the mother, at least as far as I know it right now, **the rest of the family don't believe her.** And so I think that's classic. That would—to me would be a classic situation as to why it would be passed. (emphasis added).

Although the dissent's assertion that the trial judge found the victim would be harmed by testifying in the presence of her uncle is one reasonable inference to be drawn, the emphasized language of the court's ruling is equally susceptible of the inference that the trial court determined to utilize the CCTV procedure based upon the victim's young age and fear of other family members who did not believe her. The fact that this Court is unable to ascertain precisely the basis of the trial court's ruling simply highlights the need for the case-specific findings mandated in *Murrell*.[5]

▪ As noted by Supreme Court in *Craig,*

> The trial court must also find that the child witness would be traumatized, not by the courtroom generally, but by the presence of the defendant.... Denial of face-to-face confrontation is not needed to further the state interest in protecting the child witness from trauma unless it is the presence of the defendant that causes the trauma.

497 U.S. 836, 856–7, 110 S.Ct. 3157, 3169–70, 111 L.Ed.2d 666. Here, although there was evidence indicating the victim was afraid of testifying in the presence of Bray, there was also

---

**5.** Moreover, the dissent contends the trial court's statement that "this is probably a classic case" of why section 16–3–1550(E) was passed is simply a shorthand way of saying, "I agree with you, Ms. Solicitor, and find based on the testimony of her mother and expert witness ... this victim would be traumatized by testifying in front of the Defendant." It is not the statute, but our opinion in *Murrell* which requires case-specific findings. If simple recitation to the statute were sufficient, there would be no need for case-specific determinations.

more generalized testimony concerning her fear of the court-room and her relatives. As the trial court failed to set forth case-specific findings mandated by *Murrell,* the matter must be reversed and remanded for a new trial. *See State v. Hill,* 314 S.C. 330, 444 S.E.2d 255 (1994) (trial court's failure to make case specific findings of fact supporting a decision constitutes an error of law).

■ Finally, the Court of Appeals placed great emphasis upon the trial judge's failure to personally interview the victim. In *Murrell,* this Court "suggested" the trial judge interview the child witness in addition to receiving expert testimony; we did not, however, mandate such a procedure. We decline to impose upon trial courts a categorical prerequi-site of a personal interview with the child prior to employing alternative procedures.[6] As noted by the United States Su-preme Court in *Craig,* "[a]lthough we think such evidentiary requirements could **strengthen** the grounds for use of protec-tive measures, we decline to establish . . . any such categorical evidentiary prerequisites for the use of the one-way television procedure." 497 U.S. at 860, 110 S.Ct. at 3171. (emphasis supplied). Similarly, the cases addressing the matter have consistently held that expert testimony, standing alone, is sufficient to support a finding of necessity. *See State v. Lewis,* 324 S.C. 539, 545, 478 S.E.2d 861, 864, n. 2 (Ct.App. 1996) (listing cases which hold expert testimony is sufficient evidence, by itself, to satisfy the federal statute and the Confrontation Clause). Although we decline to adopt an absolute requirement, we reiterate our holding in *Murrell* that the better practice in these cases, when possible, is for the trial judge to personally interview the child witness prior to determining whether use of CCTV is necessary.

## CONCLUSION

We disagree with the Court of Appeals' assessment of the quantum of evidence in this case. The fatal defect, in our opinion, lies not in the evidence presented by the state, but in the trial court's failure to set forth case-specific reasons for

---

**6.** Notably, at oral argument before this Court, counsel for Bray advised that he was not advocating a *per se* requirement of an interview with the child prior to utilization of CCTV for child witnesses.

use of such a procedure in this case. We reiterate, for the benefit of the trial judges of this state, that in order to support the decision to utilize CCTV, case-specific findings must be set forth including references to testimony demonstrating the child witness will in fact be traumatized, not merely by testifying in a courtroom, or in front of a crowd of people or relatives, but by the presence of the particular defendant.

**AFFIRMED IN RESULT ONLY.**[7]

MOORE, BURNETT and PLEICONES, JJ., concur.

TOAL, C.J., dissenting in a separate opinion.

TOAL, Chief Justice:

I respectfully dissent. In *State v. Murrell*, 302 S.C. 77, 393 S.E.2d 919 (1990), this Court held that "[a] decision as to whether to utilize a videotape procedure is subject to reversal only if it is shown that the trial judge abused his discretion in making such a decision or failed to follow the appropriate procedure upon deciding that a witness was entitled to special protection." *Id.* at 82, 393 S.E.2d at 922. In *Murrell*, we held that the trial judge made sufficiently specific factual findings concerning the need for a videotape procedure where he based his findings on the testimony of the family and expert witnesses. "This testimony enabled the judge to conclude that testimony by the victim in the defendant's presence would have a traumatic effect on the child." *Id.* Similarly, in the instant matter, the trial judge based his conclusion on the testimony of the victim's mother and Kim Charpia, an expert in the field of sexual abuse. Both testified that the victim may be too frightened to testify in the presence of her uncle.

The majority holds that a trial judge must verbalize the case-specific reasons for the use of a videotape procedure pursuant to S.C.Code Ann. § 16–3–1550(E)(Supp.1999). The record reveals that the trial judge found a case-specific necessity in this case, even though he did not specifically state there would be harm to the victim if she was required to testify in the presence of her uncle. After arguments from both de-

---

7. We concur with the Court of Appeals' holding that given the paucity of direct evidence in this case, the error cannot be deemed harmless.

fense counsel and the solicitor concerning the testimony of the mother and Kim Charpia and the need for a videotape procedure, the trial judge concluded that a videotape procedure was necessary. Specifically, the solicitor argued that the State satisfied the requirements of section 16–3–1550(E) and *State v. Murrell:*

> **Solicitor:** Your honor, I think we put up everything that we need to put up to satisfy the statutory requirements to allow this court to consider and order special consideration for the seven-year-old child witness in this case. The *State v. Morrow* [*State v. Murrell*] has set out in South Carolina the procedure, and it says that you are supposed to call expert witnesses and parents to testify about why the child cannot and should not testify. And two of—one each of those have been called and *they've both testified that in their opinion this child will not be able to testify in front of the defendant and, further, should not testify in front of the defendant.* (emphasis added).

> **Court:** Well, counselor, I think this is probably a classic case of why that last part of 16–3–1530[sic], I think, was passed. We've got a young child who it's alleged has been molested at the age of five and who is seven years of age now. We've got testimony from the mother about how this thing came about, and testimony from the mother and the expert which shows that except for the mother, at least as far as I know it right now, the rest of the family don't believe her. And so I think that's classic. That would—to me would be a classic situation as to why it would be passed.

The trial judge did not specifically state that he decided to order a videotape procedure because the victim would be traumatized by the presence of the defendant, as the majority recommends. However, immediately prior to the trial judge's decision, the solicitor references the testimony of the mother and Charpia concerning the victim's ability to testify in front of her uncle. Based on the solicitor's argument, the trial judge concluded that this was a classic case as contemplated by section 16–3–1550(E) and ordered the videotape procedure. The trial judge's terminology "this is probably a classic case" is simply a shorthand way of saying, "I agree with you, Ms.

34

Solicitor, and find based on the testimony of her mother and expert witness Charpia, that this victim would be traumatized by testifying in front of Defendant." The trial judge's decision should not be overturned on a mere technicality when it is clear from the record that he did not abuse his discretion, relied on the testimony of family and experts, and complied with the *Murrell* requirements. Accordingly, I would reverse the Court of Appeals' decision and affirm the decision of the trial court.