# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

The State, Respondent,

v.

David Matthew Carter, Appellant.

Appellate Case No. 2018-001032

Appeal From Lancaster County
Brian M. Gibbons, Circuit Court Judge
Steven H. John, Circuit Court Judge

Opinion No. 5817
Submitted December 1, 2020 – Filed April 21, 2021

## AFFIRMED

Chief Appellate Defender Robert Michael Dudek, of
Columbia, for Appellant.

Attorney General Alan McCrory Wilson, Senior
Assistant Attorney General David A. Spencer, both of
Columbia, and Solicitor Randy E. Newman, Jr., of
Lancaster, all for Respondent.

**HEWITT, J.:**  David Matthew Carter appeals his convictions for three counts of criminal sexual conduct with a minor in the first degree.  Carter argues the trial court erred in granting the State's request for the minor Victim—his twelve-year-old stepdaughter—to testify outside of his presence.

Carter contends Victim was not "very young" within the meaning of a victim's rights and protection statute; S.C. Code Ann. § 16-3-1550(E) (2015). He also argues that Victim did not claim she would be completely unable to testify with Carter in the courtroom, that testimony about Victim's post-traumatic stress disorder was inconsistent, and that the circumstances simply did not justify abridging the preference for face-to-face confrontation. The circuit court's decision was detailed, well-reasoned, and plainly not an abuse of discretion. We affirm.

## FACTS

As noted above, Carter is Victim's stepfather. Victim learned about sexual abuse in the fourth grade when a teacher read her class a book titled "Not in Room 204." A few months later, Victim informed her mother of the purported abuse.

Victim had just turned twelve at the time of trial but said Carter began abusing her when she was around five years old. The alleged abuse normally occurred at home behind Carter's locked bedroom door while Victim's siblings were in their rooms and her mother was at the store. Victim explained that after each assault, Carter threatened to whip her if she told anyone and made Victim "feel like it was [her] fault that he was doing all this to [her]."

Two different judges addressed the State's request that Victim not be in the same room with Carter when she testified. After a hearing the month before trial, Judge Gibbons found that "the emotional distress suffered by . . . [V]ictim . . . is more than mere nervousness or excitement or some reluctance to testify. It would be traumatic." He also found that Victim "testifying in the same room as [Carter] would impede [Victim's] ability to fully and accurately testify in this case." Still, Judge Gibbons deferred to "the trial judge to conduct an in camera interview of [Victim] to see and hear testimony if [the trial judge] so wishes as the gate keeper of the trial."

Judge John heard this same issue when the trial started. In that hearing, Victim's counselor testified that Victim suffered from post-traumatic stress disorder (PTSD). The counselor detailed Victim was afraid of Carter and did not like to talk about him. The counselor described Victim as crawling into a shell and said he had even seen Victim hide behind her mother at the mention of Carter's name. The counselor believed if Victim were forced to testify with Carter in the courtroom, "she [would] freeze and not be able to be open and upfront with what she needs to say." The counselor stated he rarely recommended a victim testify outside a defendant's presence and estimated he had done so only three or four times over the course of seeing thousands of patients in his twenty-six year career.

The pre-trial proceedings briefly adjourned following the counselor's testimony. The trial court did this so the counselor could meet with Victim and determine whether the counselor's opinion remained current. The counselor re-administered a PTSD evaluation during the break. Victim's score was below the "cutoff score" for a positive PTSD diagnosis, but the counselor explained he was convinced Victim had PTSD and that Victim still experienced significant symptoms.

The trial court also heard directly from Victim and asked her:

> Q: All right. Now, I know it may be a tough question; but if David Carter were sitting at that table over there, could you answer any of the questions?
>
> A: One or two.
>
> Q: Okay. And what do you think would happen after that?
>
> A: I'd probably freeze up and have a meltdown.

Victim's mother gave similar testimony, saying she believed Victim would "shut down" if Victim had to testify in front of Carter.

In announcing its ruling, the trial court found Victim would be traumatized by having to testify in front of Carter. The court held that "not only would her testimony be hindered, but based upon the testimony of [Counselor, Mother, and Victim,] she would . . . freeze up and not be able to answer the questions whatsoever."

The trial court ruled Victim would testify in the courtroom in an effort to place the jury in the best position to assess her credibility. Carter observed from the courtroom next door via a video monitor. One of Carter's attorneys remained in the main courtroom while Victim testified. Carter's other attorney was with him in the adjacent courtroom. The attorneys were able to communicate with each other via email.

Carter was ultimately convicted and sentenced to forty years' imprisonment. This appeal followed.

**ISSUE**

The sole issue is whether the trial court erred in employing special procedures for Victim's testimony. As already noted, Carter argues Victim was too old to qualify as "very young" under the relevant statute and alleges Victim did not claim she would be completely unable to testify with Carter in the courtroom. Carter also

argues counselor's testimony was inconsistent and that overall, the testimony simply did not justify deviating from ordinary face-to-face confrontation.

**ANALYSIS**

The law favors face-to-face confrontation but requires the court to "treat sensitively witnesses who are very young, elderly, handicapped, or who have special needs by using closed or taped sessions when appropriate." § 16-3-1550(E). Precedent explains that a court evaluating whether to employ special procedures to protect a child witness must make:

> a case-specific determination of the need for [special procedures]. In making this determination, the trial court should consider the testimony of an expert witness, parents or other relatives, other concerned and relevant parties, and the child. Second, the court should place the child in as close to a courtroom setting as possible. Third, the defendant should be able to see and hear the child, should have counsel present both in the courtroom and with him, and communication should be available between counsel and appellant.

*State v. Murrell*, 302 S.C. 77, 80–81, 393 S.E.2d 919, 921 (1990) (footnote omitted).

"A trial court's decision to allow videotaped or closed-circuit testimony is reversible 'only if it is shown that the trial judge abused his discretion in making such a decision[.]'" *State v. Bray*, 342 S.C. 23, 27, 535 S.E.2d 636, 639 (2000) (quoting *Murrell*, 302 S.C. at 82, 393 S.E.2d at 922). "An abuse of discretion occurs when the conclusions of the trial court either lack evidentiary support or are controlled by an error of law." *State v. Pagan*, 369 S.C. 201, 208, 631 S.E.2d 262, 265 (2006).

We respectfully reject Carter's argument that Victim's age prevented the court from employing any special procedures. The State has a compelling interest "in the physical and psychological well-being of child abuse victims" and may employ special procedures to protect child witnesses from the trauma of testifying if there is "an adequate showing of necessity." *Maryland v. Craig*, 497 U.S. 836, 853–55 (1990). The circuit court found the twelve-year-old Victim would be traumatized by having to face Carter when she testified and that she would basically freeze up and not be able to answer any questions whatsoever. Regardless of how one defines "very young," we think it is indisputable that the circumstance of protecting a child witness from trauma qualifies as a "special need."

We also respectfully disagree with Carter's argument that the court could not adopt special procedures unless Victim claimed she would be completely unable to testify with Carter in the court room. An "adequate showing of necessity" exists when the special procedure is needed to protect the child's welfare, when the child would be traumatized by the defendant's presence, and when the child's emotional distress caused by the defendant's presence is "more than mere nervousness or excitement or some reluctance to testify." *State v. Lewis*, 324 S.C. 539, 545, 478 S.E.2d 861, 864 (Ct. App. 1996) (quoting *Craig*, 497 U.S. at 856–57). The trial judge made precisely these findings and explicitly grounded them on testimony.

Carter argues Victim's counselor's testimony was inconsistent and specifically points to the counselor's admission that Victim's PTSD had improved while also standing by his diagnosis that Victim was still experiencing PTSD. This argument is foreclosed by the abuse of discretion standard. As already noted, that standard generally requires an error of law or a factual finding that lacks any evidentiary support. *See Pagan*, 369 S.C. at 208, 631 S.E.2d at 265. The counselor was firm in his overall opinion that Victim had PTSD and continued experiencing symptoms. It was within the trial judge's discretion to find Victim would be traumatized based on this testimony plus the testimony from Victim and her mother.

This same exact reasoning—the fact that it was within the judge's discretion to view the evidence in this record as making an "adequate showing of necessity"—controls Carter's argument that "the overall testimony here did not justify such an extreme measure" of denying face-to-face confrontation. We are not permitted to re-weigh the testimony. There is evidence supporting the judge's decision, and thus no abuse of discretion.

**CONCLUSION**

Based on the foregoing, Carter's convictions are

**AFFIRMED.** [1]

**THOMAS and HILL, JJ., concur.**

---

[1] We decide this case without oral argument pursuant to Rule 215, SCACR.