**THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

The State, Respondent,

v.

Charles Jason Carmichael, Appellant.

Appellate Case No. 2022-001717

———————

Appeal From Richland County
Clifton Newman, Circuit Court Judge

———————

Unpublished Opinion No. 2025-UP-032
Heard October 9, 2024 – Filed January 29, 2025

———————

**AFFIRMED**

———————

Yasmeen Ebbini, of Nelson Mullins Riley & Scarborough, LLP, and Chief Appellate Defender Robert Michael Dudek, both of Columbia, for Appellant.

Attorney General Alan McCrory Wilson, Deputy Attorney General Donald J. Zelenka, Senior Assistant Deputy Attorney General Melody Jane Brown, Assistant Attorney General William Joseph Maye, and Solicitor Byron E. Gipson, all of Columbia, for Respondent.

———————

**PER CURIAM:**  Charles Jason Carmichael appeals his convictions for the murders of Rufus Carmichael, his brother, and Ashli Haigler, Rufus's girlfriend, and two counts of possession of a weapon during the commission of a violent crime.  On appeal, Carmichael argues (1) the trial court erred by using special procedures for the testimony of a child witness (the Child)[1] because the court did not assess the Child's state of fear and the Child's testimony as the sole witness to the murder was inconsistent and introduced impermissible hearsay; (2) the trial court erred in admitting hearsay testimony that was improperly used to bolster the declarant's statements; and (3) the solicitor erred by improperly pitting Carmichael against adverse witnesses on cross-examination.  We affirm.

1.  We hold the trial court did not err in allowing the Child, who was Haigler and Rufus's son, to testify outside Carmichael's presence.  *See State v. Bray*, 342 S.C. 23, 27, 535 S.E.2d 636, 639 (2000) ("A trial court's decision to allow videotaped or closed-circuit testimony is reversible 'only if it is shown that the trial judge abused his discretion in making such a decision [.] . . .'" (quoting *State v. Murrell*, 302 S.C. 77, 82, 393 S.E.2d 919, 922 (1990))); *State v. Chavis*, 412 S.C. 101, 106, 771 S.E.2d 336, 338 (2015) ("An abuse of discretion occurs when the conclusions of the [trial] court are either controlled by an error of law or are based on unsupported factual conclusions."); *Bray*, 342 S.C. at 27, 535 S.E.2d at 639 ("Where there is evidence to support a trial court's ruling, it will not be overturned for an abuse of discretion.").  We hold the trial court properly considered the testimonies of the Child's grandmother, Rachel Alston, and his therapist, Hannah Hucks, and his school counselor's records when deciding to allow him to testify outside Carmichael's presence.  *See* S.C. Code Ann. § 16-3-1550(E) (2015) ("The circuit or family court must treat sensitively witnesses who are very young, elderly, handicapped, or who have special needs by using closed or taped sessions when appropriate."); *see also Murrell*, 302 S.C. at 80-81, 393 S.E.2d at 921 ("First, the trial [court] must make a case-specific determination of the need for videotaped

---

[1] The Child testified in the courtroom while Carmichael was in an adjacent room observing the testimony through a video monitor.  Carmichael had counsel in the room with him and additional counsel in the courtroom where the Child testified.  This appears to be the same procedure used in *State v. Carter*, 433 S.C. 352, 857 S.E.2d 910 (Ct. App. 2021).  The particulars of this procedure were not at issue in *Carter*, are not at issue here, and we express no opinion on them.  As in *Carter*, Carmichael's only argument on this subject revolves around whether the evidence in this case was sufficient to warrant special procedures during the Child's testimony.

testimony. In making this determination, the trial court should consider the testimony of an expert witness, parents or other relatives, other concerned and relevant parties, and the child."); *Bray*, 342 S.C. at 31, 535 S.E.2d at 641 (declining "to impose upon trial courts a categorical prerequisite of a personal interview with the child prior to employing alternative procedures" and stating "the cases addressing the matter have consistently held that expert testimony, standing alone, is sufficient to support a finding of necessity"). Hucks and Alston testified that the Child suffered from flashbacks, nightmares, and other symptoms of PTSD after his parents' deaths. Both also testified they were concerned the Child would not be able to testify about what occurred the night of his parents' deaths in front of Carmichael and that testifying in front of Carmichael could set back the Child's recovery. We hold the trial court was not required to interview the Child before allowing him to testify outside Carmichael's presence. The trial court previously heard the testimony of Alston and Hucks regarding the Child's fear of testifying in front of Carmichael and the harm testifying in front of Carmichael would cause the Child. After hearing the testimony and reviewing the Child's school counselor's records, the trial court stated, "Based on what I've heard and reviewed all the records and the testimony, I find that the child will be traumatized by having to face the defendant." Therefore, we hold the trial court's decision to allow the Child to testify outside Carmichael's presence did not violate Carmichael's right to confrontation because the trial court made a proper, case-specific determination based on the testimony and records presented.

2. We hold the trial court did not abuse its discretion in admitting the statement the Child made to Officer Davis under the excited utterance exception to the rule against hearsay. *See State v. LaCoste*, 347 S.C. 153, 160, 553 S.E.2d 464, 468 (Ct. App. 2001) ("Rulings on the admissibility of evidence are within the trial court's sound discretion and will not be disturbed on appeal absent an abuse of that discretion resulting in prejudice to the complaining party."); *Chavis*, 412 S.C. at 106, 771 S.E.2d at 338 ("An abuse of discretion occurs when the conclusions of the [trial] court are either controlled by an error of law or are based on unsupported factual conclusions."); Rule 803(2), SCRE (allowing an exception to the hearsay rule for "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition"). Officer Davis testified that the Child, who was five years old at the time of the incident, told her, "My Mommy is dead" and "Uncle Jason shot my mommy" when she arrived at the scene of the shooting and found the Child in the truck with Haigler's body. Officer Davis testified that the Child was "frantic" when he made the statement. We hold the Child's statement was admissible as an excited utterance because it related to the startling event of his mother's death, the

statement was made while the Child was still under the stress of excitement, and the stress of excitement was caused by his mother's death. *See State v. Stahlnecker*, 386 S.C. 609, 623, 690 S.E.2d 565, 573 (2010) ("Three elements must be met for a statement to be an excited utterance: (1) the statement must relate to a startling event or condition; (2) the statement must have been made while the declarant was under the stress of excitement; and (3) the stress of excitement must be caused by the startling event or condition."); *State v. Sims*, 348 S.C. 16, 20, 558 S.E.2d 518, 521 (2002) ("In determining whether a statement falls within the excited utterance exception, a court must consider the totality of the circumstances."); *Stahlnecker*, 386 S.C. at 623, 690 S.E.2d at 573 ("The passage of time between the startling event and the statement is one factor to consider, but it is not the dispositive factor."); *id.* ("Other factors useful in determining whether a statement qualifies as an excited utterance include the declarant's demeanor, the declarant's age, and the severity of the startling event." (quoting *Sims*, 348 S.C. at 22, 558 S.E.2d at 521)). We hold the Child's statement was admissible as an excited utterance even though he was hiding in the backseat of the truck and did not actually see the shooting because he was still physically present during the shooting and his statement was based on his firsthand knowledge of the shooting. This case differs from *State v. Hill*, which Carmichael cites to support his argument that the Child's statement was not an excited utterance because he did not see the shooting, because in *Hill* there was no evidence the witness was physically present at the time of the incident. *See* 331 S.C. 94, 99-100, 501 S.E.2d 122, 125 (1998) (holding the statement of an unidentified declarant was not admissible as an excited utterance because there was no evidence the declarant witnessed the shooting and it was "unknown whether the declarant was under the stress of excitement caused by the event"). Accordingly, we hold the trial court did not err in admitting the Child's statement under the excited utterance exception to the hearsay rule.

Further we reject Carmichael's argument that the Child's statement was inadmissible hearsay within hearsay because the Child based his statement on Haigler's statement "Jason, where is my baby's daddy?" We hold the Child's statement was admissible even if it was hearsay within hearsay because Haigler's statement was also admissible under the excited utterance exception to the hearsay rule. *See Stahlnecker*, 386 S.C. at 623, 690 S.E.2d at 573 (listing the three elements that must be met to admit a statement as an excited utterance). Haigler's statement was an excited utterance because it related to the startling event of Rufus's disappearance, it was made while Haigler was under the stress of excitement while searching for Rufus, and Haigler's stress was caused by Rufus's

disappearance. Therefore, we hold the trial court did not err in admitting the Child's statement at the crime scene, even if it was based on Haigler's statement.

Next, although we conclude the trial court erred in admitting the text messages between Rufus and Carmichael as evidence of Rufus's state of mind, we hold the error was harmless. We hold the trial court's admission of these text messages did not prejudice Carmichael because they do not include any threat on Carmichael's part to harm Rufus and do not provide any evidence of guilt. *See LaCoste*, 347 S.C. at 160, 553 S.E.2d at 468 ("Rulings on the admissibility of evidence are within the trial court's sound discretion and will not be disturbed on appeal absent an abuse of that discretion resulting in prejudice to the complaining party."). Additionally, given the extent of the evidence against Carmichael presented at trial, we hold the admission of the text messages was harmless because it did not affect the result of the trial. *See Chavis*, 412 S.C. at 109, 771 S.E.2d at 340 ("An appellate court generally will decline to set aside a conviction due to insubstantial errors not affecting the result."); *id.* at 109-10, 771 S.E.2d at 340 ("Whether an error is harmless depends on the circumstances of the particular case. No definite rule of law governs this finding; rather, the materiality and prejudicial character of the error must be determined from its relationship to the entire case." (citation omitted)); *State v. Langley*, 334 S.C. 643, 647-48, 515 S.E.2d 98, 100 (1999) ("Even if the evidence was not relevant and thus wrongly admitted by the trial judge, its admission may constitute harmless error if the irrelevant evidence did not affect the outcome of the trial."). The State presented evidence that Carmichael had Rufus's blood and DNA on his pants and under his fingernails at the time of his arrest. The State's ballistics expert testified that the shell casings found in Carmichael's pocket at the time of his arrest, at the scene of Haigler's murder, and in Rufus's body were all fired by the pistol found on the front seat of the U-Haul Carmichael was driving when police arrested him. The State also presented evidence that Carmichael rented and paid for the U-Haul and did not call 911 after he discovered blood in the U-Haul. The State presented video of the U-Haul near Rufus's house, near the scene when Haigler was shot, and near the location where they found Rufus's body. The State also showed that Carmichael's cell phone records could be coordinated with the movements of the U-Haul the night of Haigler's and Rufus's deaths. Additionally, Carmichael was arrested driving the U-Haul away from his home and while in possession of Rufus's driver's license. Considering this evidence, we hold any error in admitting the text messages was harmless because it did not affect the outcome of the trial.

3. We hold Carmichael's argument that the solicitor erred by improperly pitting him against adverse witnesses on cross-examination is not preserved for appellate

review because Carmichael did not object to the State's questioning during the trial. *See State v. Johnson*, 363 S.C. 53, 58, 609 S.E.2d 520, 523 (2005) ("To preserve an issue for review there must be a contemporaneous objection that is ruled upon by the trial court."); *id.* at 58-59, 609 S.E.2d at 523 ("If a party fails to properly object, the party is procedurally barred from raising the issue on appeal.").  Further, we hold Carmichael's argument that his failure to make a contemporaneous objection should be overlooked due to the State's inflammatory and prejudicial argument was not preserved for appellate review because, based on the record, he did not raise the issue to the trial court in a post-trial motion.  *See Toyota of Florence, Inc. v. Lynch*, 314 S.C. 257, 263, 442 S.E.2d 611, 615 (1994) ("[E]ven in the absence of a contemporaneous objection, a new trial motion should be granted in flagrant cases where a vicious, inflammatory argument results in clear prejudice."); *Dial v. Niggel Assocs., Inc.*, 333 S.C. 253, 256-57, 509 S.E.2d 269, 271 (1998) ("*Toyota* sets forth a narrow exception to the general rule that a party must make a contemporaneous objection to improper argument or the objection is waived."); *id.* at 257, 509 S.E.2d at 271 ("Under *Toyota*, the issue of inflammatory argument must be raised to the trial judge by way of post-trial motion to preserve the issue for appeal.").

**AFFIRMED.**

**THOMAS, HEWITT, and VINSON, JJ., concur.**