THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ZACHARY FIELDS *et al.*, Defendants-Appellants.

First District (5th Division)    No. 78-726

■■■■■■■■

Opinion filed May 4, 1979.

Ralph Ruebner and Steven Clark, both of State Appellate Defender's Office, of Chicago, for appellants.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger, James S. Veldman, and Kathleen M. McGury, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE MEJDA delivered the opinion of the court:

Defendants, Zachary Fields and Fred Davis, were charged by information with armed robbery and aggravated battery. (Ill. Rev. Stat. 1973, ch. 38, pars. 18—2 and 12—4.) Following a jury trial Davis was found guilty of both charges while Fields was found guilty of only the armed robbery. Davis was sentenced to a term of 6 to 18 years and Fields received a sentence of 4 to 12 years. The sole issue on appeal is whether certain testimony was erroneously admitted into evidence under the excited utterance exception to the hearsay rule.

We affirm. The following pertinent evidence was adduced at trial.

*For the State*

Complainant, Linda Clark, testified. She was walking home on Beldon Avenue at about 7 p.m. on November 13, 1975. It was dark but street lights illuminated the area. A car slowly drove past in the same direction as she was walking and parked ahead of her. Two men got out, crossed to the opposite side of the street, and walked in the opposite direction. The complainant kept watching them over her shoulder and noticed they were watching her. They turned a corner and disappeared. She proceeded on her way when she heard someone running behind her. A man then grabbed her shoulder and said, "This is a holdup, honey, hand it over." She struggled with him for the handbag she was carrying until he drew a gun and hit her on the head with it. She then released the purse which contained about $34. She chased the man as he ran down the street. He jumped into a waiting car and she took cover behind a mailbox. As the car pulled away a taxicab was passing and the victim screamed to the driver. The cab driver blocked the escape of the car by slowly swerving from side to side. People began to come out of nearby buildings and complainant shouted to them to get the car's license number. Four or five people chased the car and shouted the number back and forth. Two shots were fired and everyone fell to the ground. A man near complainant wrote the number on a slip of paper which she gave to two policemen who arrived shortly. They interviewed complainant and then took her home. Later, while she was viewing photographs at a police station, a call informed her that an arrest had been made and requested her to view a lineup at another police station. She identified the two defendants at the lineup.

At trial, she testified that the struggle for the handbag took place under a street light. During the struggle she looked at her attacker and at trial gave a detailed description of him. She identified defendant Davis as this person. She also described the other man and identified defendant Fields as the accomplice.

On cross-examination complainant testified that she did not actually see the license number of the car which her attackers drove.

Chicago police officer Patrick Moran testified. On November 13, 1975, at about 7 p.m. he and his partner, Officer Rickher, received a robbery in progress call on the police radio. They went to the scene of the robbery, interviewed the complainant, and brought her to her apartment. At the scene, complainant told him that she had been robbed by two persons, one of whom displayed a handgun and took her purse. They left in a dark-colored four-door Oldsmobile and she told them that the license number was YK 8576, on a 1975 Illinois plate. He left complainant at about 8 p.m. and a subsequent check of the license number disclosed that the number was registered to Ella Davis who lived in the 4500 block of West 21st Street.

On cross-examination, the officer testified the complainant gave him a piece of paper with the license number and told him she had observed it herself.

Chicago police investigator Baker testified. He interviewed the complainant at her apartment. He received information regarding a license number and went to the home of Ella Davis at 4254 West 21st Street. As he approached the house he noticed a car parked in front matching the description of the getaway car and the license number given to him. After a conversation with Ella Davis, he found defendant Fields several blocks away and placed him under arrest. Defendant Davis was placed under arrest a short time later. A search of Fields revealed $34 in currency. Officer Baker further testified that Ella Davis is defendant Davis' mother.

On cross-examination he testified that complainant did not actually see the license plate but obtained the number from witnesses in the area.

At the close of the State's case, a certified copy of an automobile registration for 1975 Illinois license plate YK 8576, registered to Ella Davis, 4254 West 21st Street, Chicago, for a 1969 Oldsmobile was received into evidence without objection. It was also stipulated that at the time of the offense, defendants Fields and Davis were 17 and 22 and at time of trial 19 and 24, respectively.

Defendants made a motion for a directed verdict which was denied.

Defendant Fields testified. On November 13, 1975, he visited the Davis home between 4 and 7 p.m. He left alone at that time and walked home, arriving at 7:15 p.m. Davis also left at 7 p.m. but drove his mother's car. Fields left his home at 7:40 p.m., went to a store and then returned to the Davis home. He remained there until 8:35 p.m. when he left for home. He was arrested in front of his house. He testified that he was never in Mrs. Davis' car with Fred Davis, and denied ever seeing or robbing the complainant. He also stated that after he saw Fred Davis leave at 7 p.m., he saw him back at the Davis home at about 8:15 p.m.

Defendant Fred Davis testified. He testified consistently with Fields. He borrowed his mother's car at about 7 p.m. to visit a cousin. After the visit he returned to his mother's house, then left for his own home. He met a

friend and went to a lounge where he was told by his sister that the police were looking for him. He called home and spoke with his mother and then an investigator. He told the investigator where he was and waited for the police to arrive. They arrested him 5 to 10 minutes later.

The jury found defendant Fields guilty of armed robbery and defendant Davis guilty of armed robbery and aggravated battery and the court imposed sentences. Defendants bring this appeal.

OPINION

On appeal, defendants contend the hearsay declarations of unidentified bystanders as to the license plate number of the car used by an armed robber were improperly admitted into evidence since defendants could not cross-examine the declarants as to the accuracy of their observations or the subsequent verbal and written reporting of the number. The State argues that the testimony was properly admitted since it fulfilled all of the requirements of the excited utterance exception to the hearsay rule, none of which account for possible inaccuracies of perception. Alternatively, the State argues that if its admission was erroneous, it was harmless and that defendants waived the issue by not including it in their written motion for a new trial.

Prior to trial, defendants made a motion *in limine* to prevent the State from using hearsay statements regarding the license plate number to link defendants to the crime. They argued that complainant had not seen the number personally and that they had no opportunity to cross-examine those who did see it as to their perception, recollection, or ability to observe since those witnesses were not at trial. The State argued that the license number was admissible under the excited utterance exception to the hearsay rule. The trial court denied the motion *in limine* and suggested that the defense could argue questions of credibility and perception to the jury.

■■■ Three factors are necessary to bring a statement within the excited utterance exception to the hearsay rule: (1) an occurrence sufficiently startling to produce a spontaneous and unreflecting statement; (2) absence of time to fabricate; and (3) the statement must relate to the circumstances of the occurrence. (*People v. Poland* (1961), 22 Ill. 2d 175, 174 N.E.2d 804.) We find that these factors were present in the instant case and that the statements regarding the license number fell within the exception.

Defendants maintain that the traditional test for the exception fails to address the question of the accuracy of the declaration (independent of any possible fabrication by the declarant) in situations such as the intent case where the subject matter of the declaration could easily be incorrectly observed or reported. Because the possible inaccuracy of the declaration could not be shown by cross-examination, defendants contend they were unable to effectively challenge the reliability of the observations by the

declarants which corroborated the complainant's identification. They urge that the excited utterance exception should be limited to situations where the declarant is available for cross-examination or where an unavailable declarant's observations are likely to be accurate.

The declaration need not be made by a participant of the event to qualify as an excited utterance but may be that of a bystander. (*People v. Poland* (1961), 22 Ill. 2d 175, 174 N.E.2d 804; see Annot., 50 A.L.R.3d 716, 728-29 (1973).) It must appear at least inferentially that the declarant observed the matters he reports and that there is nothing to make a contrary inference more probable. (*People v. Poland*; see Annot., 127 A.L.R. 1030 (1940); 29 Am. Jur. 2d *Evidence* §726 (1967).) Here, complainant testified that four or five people chased the car and called out the license number. It clearly appears that the declarants personally observed the license plate but it is their ability to observe and the accuracy of their observation which are challenged.

The justification for the exception as quoted in *People v. Damen* (1963), 28 Ill. 2d 464, 193 N.E.2d 25, is as follows:

> "* * * The admissibility of such exclamation is based on our experience that, under certain external circumstances of physical or mental shock, a stress of nervous excitement may be produced in a spectator which stills the reflective faculties and removes their control, so that the utterance which then occurs is a spontaneous and sincere response to the actual sensations and perceptions already produced by the external shock. Since this utterance is made under the immediate and uncontrolled domination of the senses, rather than reason and reflection, and during the brief period when consideration of self-interest could not have been fully brought to bear, the utterance may be taken as expressing the real belief of the speaker as to the facts just observed by him." (28 Ill. 2d 464, 471; see also McCormick, Evidence §297, at 704-05 (2d ed. 1972).)

The lack of time to reflect on the event or to fabricate serves as a reasonable substitute for an oath and makes the declaration reliable as an expression of the declarant's real belief as to the facts just observed. The accuracy of the observation in any case would depend on both objective and subjective factors. Objective factors would include lighting, distance, and whether the declarant had a direct or obstruct view. Subjective factors would include the declarant's eyesight, sobriety, and ability to narrate. If the nature of the declaration or circumstances when made indicate that the bystander did not observe the act or fact declared, the declaration should be excluded. (See *People v. Poland*.) Where it appears that the bystander did observe the fact, the declaration should be allowed in evidence for the truth of the declarant's belief of what he observed.

Defendants' contention that the inability to cross-examine the

declarant prevented effective argument regarding the reliability of the observation is not persuasive. The declaration is admissible regardless of declarant's presence at trial. (*People v. Robinson* (1978), 73 Ill. 2d 192, 383 N.E.2d 164.) The factors relating to the declarant's subjective or objective ability to observe could ordinarily be sufficiently developed through examination of other witnesses at trial and argued to the finder of fact to discredit the accuracy and reliability of the declaration. The weight and credibility to be given to the declaration would be considered with the other evidence in reaching a verdict.

In the present case, complainant testified as to the time of day, lighting conditions, speed of the car, and location and viewpoint of the declarants. All of these factors could be argued to the jury to attempt to discredit the accuracy of the reported license number. In his closing argument defense counsel commented on the possibilities of mistake or inaccuracy in obtaining the license number so that the jury could weight the accuracy of the declaration. The possibility of inaccuracies was appropriately argued to the jury without cross-examination of the declarants.

The reliability and accuracy of the observation in the instant case is suggested by the fact that several people observed the license plate and concurred in the number. Their utterances may be taken to express the real belief of the declarants. There is nothing to make a contrary inference more probable. Furthermore, it would be unlikely for each of them to incorrectly observe the license number with the same result.

■■ For the foregoing reasons we find that the declaration regarding the license plate number was properly admitted into evidence and that defendants were not prevented from effectively arguing the reliability of the statement. Accordingly, the judgments of the circuit court are affirmed.

Affirmed.

SULLIVAN, P. J., and WILSON, J., concur.