**Freddie UNDERWOOD**

v.

**STATE of Tennessee.**

Court of Criminal Appeals of Tennessee, at Knoxville.

Sept. 20, 1979.

Robert J. Brenner, Knoxville, for appellant.

William M. Leech, Jr., Atty. Gen., John C. Zimmermann, Asst. Atty. Gen., Nashville, James R. Dedrick, Asst. Atty. Gen., Ronald A. Webster, Dist. Atty. Gen., Knoxville, for appellee.

## OPINION

SCOTT, Judge.

The defendant/appellant has appealed his conviction of armed robbery for which he received a sentence of eighteen years in the State Penitentiary. Three errors are assigned, all of which lack any merit.

By the standard assignment of error, the defendant alleges that the evidence was insufficient to support the verdict, that the verdict was contrary to the weight of the evidence, and that the evidence preponderates against the verdict.

George Tucker, the victim, testified that he had trouble with the electrical system on his truck at about 5:00 o'clock A.M. on July 24, 1978, as he was going to pick up a fellow employee of the restaurant which he managed. He asked a friend who was present to help him push the truck in an attempt to start it. They were unsuccessful, so the defendant came and helped them push the truck over against the curb to get it out of the traveled portion of the street. In an effort to make the truck operational, Mr. Tucker and his friend took the battery from the friend's car and put it in place in the truck. As this was being done, the defendant was standing by the friend's car.

The efforts to start the truck met with failure and Mr. Tucker went to a house to call a wrecker. After placing the call, he left the house and started to the street

corner to await the wrecker. As he passed a garbage dumpster, Mr. Tucker was hit behind the ear with an iron pipe. He was knocked to the ground and rolled over three or four times. His assailant then straddled him and subsequent blows with the pipe found their marks on Mr. Tucker's shoulder, elbow, wrist, and four times to the front of the skull. Thirty two stitches were required to close Mr. Tucker's head wounds.

Mr. Tucker grabbed the pipe as his assailant came down with another stroke. At this time, the assailant tore Mr. Tucker's vest, grabbed his wallet containing $39.00 and an assortment of personal papers, none of which were ever recovered. The pipe was given to the police, but they were unable to lift any fingerprints due to its bloody condition.

Although Mr. Tucker stated that he had never seen the defendant before that day, he positively identified the defendant as the man who helped him push his truck and who later hit him with the pipe and took his wallet. Mr. Tucker observed the defendant from a distance of twelve to fourteen inches as they struggled on the ground. He gave police officers a description of the defendant, *including his name*, and picked his photograph from a group of five shown to him in the hospital.

The defendant introduced as his only witness a lady who testified that Mr. Tucker had been at the Hound Dog Club drinking a little much earlier that night. This contradicted Mr. Tucker's testimony that he drank one-half of a beer shortly before the incident. This same witness came by as the men were attempting to start the truck and testified that she saw the defendant, Mr. Tucker, and the friend working on the truck.

In his statement to the police, the defendant admitted assisting with the truck, but denied the attack and robbery of Mr. Tucker. Hearing this proof, the jury found the defendant guilty of armed robbery.

Our Supreme Court, speaking through Justice Harbison, has held that:

A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the state and resolves all conflicts in favor of the theory of the state. This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and the jury are the primary instrumentality (sic) of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn.1978), quoting *State v. Grace*, 493 S.W.2d 474, 476 (Tenn.1973), and *Bolin v. State*, 219 Tenn. 4, 11, 405 S.W.2d 768, 771 (1966).

Therefore, neither the Supreme Court nor this Court is free to reevaluate the evidence as it pleases. *State v. Cabbage*, supra. The burden is upon the appellant to prove that the evidence preponderates in favor of his innocence and against the verdict. *State v. Sneed*, 537 S.W.2d 699, 701 (Tenn.1976). The verdict will be disturbed on the facts only if the evidence clearly preponderates against it and in favor of the innocence of the accused. *Hughes v. State*, 3 Tenn.Cr.App. 602, 465 S.W.2d 892, 896 (1970).

From the foregoing factual recitation, the evidence clearly does not preponderate against the jury's findings and in favor of the defendant's innocence. There is sufficient evidence to justify a rational trier of fact to find guilt beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). This assignment of error clearly has no merit.

Next, the defendant alleges that error occurred when the trial judge allowed, over the defense counsel's challenge for cause, a certain juror to remain on the jury. From counsel's statement in the record, it appears that a venireman was married to a cousin of a detective who testified in the case. Over defense counsel's strenuous objection,

he was impaneled as a member of the jury and allowed to sit on the trial of this case.

■■■ This matter is not properly before this Court. The record contains only the arguments of counsel before the trial judge, and the judge's ruling on the challenge. The voir dire examination of the prospective juror is not included. When any assignment of error attacks the jury selection process, the bill of exceptions or technical record must include the portion of the voir dire which is at issue. *Carroll v. State*, 517 S.W.2d 13, 17 (Tenn.Cr.App.1974); *Seymour v. State*, 546 S.W.2d 250, 253 (Tenn.Cr.App. 1976). Denied the benefit of the questions propounded to the juror and his answers thereto, we cannot review his ability to serve impartially.

■■■ Although alleged in the brief, there is no proof that the defendant had exhausted his peremptory challenges. The denial of a challenge for cause can only be reviewed if at the time of the challenge the defendant has exhausted his peremptory challenges. *Hale v. State*, 198 Tenn. 461, 281 S.W.2d 51, 56 (1955), *McCook v. State*, 555 S.W.2d 411, 413 (Tenn.Cr.App.1977). This assignment is overruled.

Finally, the defendant challenges, as inadmissible hearsay, the admission of the victim's testimony that during the affray with his assailant, an unidentified woman screamed, "Stop Freddie. Don't kill that man." Mr. Tucker testified that the statement came from an apartment window in the area near the scene of the crime, but the declarant was never located. The trial judge admitted the statement as an excited utterance under the so-called *res gestae* exception to the hearsay rule. This term is used by the courts, but condemned by most text-writers and distinguished judges. Morgan, *Basic Problems of Evidence*, 328 (1962).

■■■ Tennessee, like most other states, recognizes the rule admitting evidence of a spontaneous declaration or excited utterance, and the Tennessee cases do not confine such evidence to statements of an actor or participant in the event. A statement of a person who is a bystander, if sufficiently spontaneous and contemporaneous, is admissible. *Montesi v. State*, 220 Tenn. 354, 417 S.W.2d 554, 560 (1967).

Defense counsel, citing *Montesi*, argues that there is no proof in the record that the declarant observed the robbery and that in the absence of such proof, the statement is inadmissible.

Reliance on *Montesi* is misplaced. In that case, the defendant was convicted of voluntary manslaughter of his wife. Her death occurred during a fight in their home. There were no eyewitnesses and the evidence was entirely circumstantial. The parties' sixteen year old daughter was in her room during the turmoil. She called her boyfriend and asked him to come after her. He stated that she told him on the telephone, "I believe Mother and Daddy are fighting". 417 S.W.2d 554, 560.

The Supreme Court, citing *American Jurisprudence*, stated:

With respect to the question as to the admissibility of a declaration of a non—participant as affected by evidence or lack of evidence that he actually observed the act or fact, the res gestae exception to the hearsay rule cannot properly dispense with the requirement that in some way, at least, and with some degree of persuasive force, it must appear that the declarant was in reality a witness to the thing which he declared. Yet the cases will not justify the statement that it must appear by direct evidence that the declarant observed the specific act or fact declared; but only that it must appear, at least inferentially, that he was present and that his declaration arose from personal observation; and it must not appear that the declarant did not personally witness the thing declared. 20 Am.Jur., Evidence, § 674 (Supp.1967), *Montesi v. State*, Id., 417 S.W.2d at 560–561.

Since it affirmatively appeared that the daughter did not witness the events, her conclusions as to what was happening were held clearly inadmissible, 417 S.W.2d 554, 561.

In *Morton v. State*, 91 Tenn. 437, 19 S.W. 225, 227 (1892), where the defense was self defense, the Supreme Court held that it was error not to admit evidence of a statement by an unknown member of a hostile crowd. Someone in the crowd was heard to say of the defendant, "Kill him! Kill him! Don't let that nigger get back to the bottom. Kill him!" The defendant sought to prove this by a lady who was present and heard someone in the crowd make this exclamation.

Although two other witnesses were afterwards allowed to state that they heard Smily Jennings use the language in question, the Court held that this did not cure the error, for the defendant was entitled to the broadest proof he could make on the subject. 19 S.W. 225, 227.

 We hold that an excited utterance of a bystander is admissible as an exception to the hearsay rule when it appears, directly or by inference, that the declarant was present, that he observed the fact or specific act about which the declaration was made, and that the declaration arose from the personal observation.

 Unlike *Montesi*, this record does not affirmatively show that the declarant was unable to see the affray, nor does it show directly that she did. However, it does appear inferentially that she saw the altercation. It is implicit in the statement itself that she saw what was going on and sought to prevent "Freddie" from killing "that man". The statement itself, which occurred at substantially the same time that the event in question was taking place, together with all the surrounding circumstances, was evidence of personal observation. The statement is hardly what one would expect to hear a lady scream from an apartment window at 5:00 o'clock A.M. unless the declarant had seen something unusual happening before her eyes.

Even assuming arguendo that the statement should not have been admitted, in the context of this case, it was harmless error. The victim's testimony regarding the identity of his assailant was overwhelming. The defendant had pushed the victim's disabled truck a few minutes before, had waited beside the car as efforts were made to repair the truck, and was closely observed face to face from a distance of twelve to fourteen inches during the fracas. Although the record fails to reveal how the victim knew it, he even provided the investigating officers with the defendant's name. Added to this overwhelming evidence of guilt, a statement by a bystander as to what was occurring was inconsequential.

This assignment like the others is overruled and the judgment is affirmed.

TATUM and CORNELIUS, JJ., concur.