553 S.E.2d 464

**The STATE, Respondent,**

v.

**Jon Pierre LaCOSTE, Appellant.**

**No. 3383.**

Court of Appeals of South Carolina.

Heard June 6, 2001.
Decided Sept. 4, 2001.
Rehearing Denied Oct. 17, 2001.
Certiorari Granted Feb. 25, 2002.

Assistant Appellate Defender Robert M. Pachak, of SC Office of Appellate Defense, of Columbia, for appellant.

Attorney General Charles M. Condon, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Robert E. Bogan, Senior Assistant Attorney General Charles H. Richardson; and Solicitor Thomas E. Pope, of York, for respondent.

HUFF, J.:

Jon Pierre LaCoste was convicted of resisting arrest, disorderly conduct, and assault. He appeals, arguing the trial court erred in (1) refusing to grant a directed verdict on each of his indicted charges, (2) excluding certain hearsay statements, (3) refusing to give a full and complete charge on the right to resist an illegal arrest, and (4) charging simple assault as a lesser included offense of criminal domestic violence. We reverse and remand.

## FACTUAL/PROCEDURAL BACKGROUND

LaCoste was indicted on charges of criminal domestic violence (CDV), resisting arrest, and disorderly conduct following an incident at The Galleria Mall in York County. At trial, Joyce Giles testified she visited the mall on the afternoon of July 14, 1998. As she was leaving in her car, she noticed a man and a woman "hitting at each other." The man, whom she identified as LaCoste, "grabbed at [the woman]," who "jerked away," and began striking him with her purse. She believed LaCoste was trying to rob the woman and that the woman was attempting to get away from him. She was also concerned because LaCoste was considerably larger than the woman. LaCoste slapped at the woman, making contact seven or eight times. As the pair moved about the parking lot exchanging blows, Giles called 9-1-1. During the four to five minutes before the police arrived, the two continued "pushing and shoving each other."

Officer Jeremy McCloud of the Rock Hill Police Department testified he arrived at the mall in response to a possible domestic disturbance dispatch. As he approached, he noticed the man and woman in a verbal altercation which he immedi-

ately recognized as a possible domestic situation. LaCoste was flailing his arms about in an angry, almost hostile manner, while the woman stood in a "normal, . . . defensive-type posture." When McCloud exited his patrol car, the woman retreated to an area behind him while the man continued to advance. McCloud told LaCoste to stop, to which the man threw his arms up in a hostile manner and replied, "for what." McCloud told him to "stop right there" and the man again replied, "for what." The officer then told LaCoste to stop because he was under arrest for criminal domestic violence. According to McCloud, LaCoste began cursing at him and stated he would not follow the officer's commands. After a continued verbal exchange where McCloud ordered him to stop and the man continued to refuse, McCloud prepared to pepper spray LaCoste and threatened to do so if he did not comply. LaCoste cursed the officer and told him to put the spray away. When sprayed, he pushed the officer away. The officer sprayed him again, but it appeared to have little effect on him.

By this time, Officer Jeffrey Cornwell of the York County Sheriff's Department arrived to assist McCloud. LaCoste continued to resist and was sprayed by Officer Cornwell, again to no avail. He held his arms straight to avoid being handcuffed. The two officers held LaCoste on the hood of the car until additional units arrived and only then were they able to physically overpower him and handcuff him. Because he had been in an altercation with LaCoste, Officer McCloud did not personally conduct any interviews.

Giles testified she approached the woman after officers placed LaCoste in a police car. The woman said LaCoste was her husband, he was a karate expert, and she was afraid of him.

LaCoste and his wife testified in his defense. The couple had separated approximately two or three weeks prior to the incident and remained separated at the time of trial. They both testified Mrs. LaCoste came to the mall looking for her husband to discuss finances. LaCoste was at the mall buying shoes. Mrs. LaCoste, who was already upset, became angry when she saw LaCoste's girlfriend, Angela Ervin, who was working at the mall. Ervin saw Mrs. LaCoste and smirked at

her. When LaCoste tried to prevent his wife from following Ervin out of the mall, she punched him in the face and slapped him several times, before following Ervin.

Once outside the mall, Mrs. LaCoste checked to see if Ervin was inside LaCoste's car. Ervin was not inside, but Mrs. LaCoste grabbed a shopping cart and banged it into the car's headlights. She then began scratching the car with her keys. LaCoste pleaded with her to stop, telling her someone was going to see her and she might get arrested. She then turned the keys on LaCoste, lunging at him with the keys in one hand while swinging her purse at him with her other hand. After a while, he grabbed the keys from her and threw them to the ground. Mrs. LaCoste testified her husband never hit her.

About this time, Officer McCloud arrived. LaCoste testified he tried to explain the situation to the officer, but the officer would not listen. He testified that during the altercation with his wife, he asked a woman who was with a man in a military uniform to call the police and the woman then walked over to a telephone. He thus thought McCloud was there upon his request. LaCoste stated he did not comply with McCloud's requests that he put his arms behind his back to be handcuffed because he knew he had not done anything wrong.

The jury found LaCoste guilty on the indictments for resisting arrest and disorderly conduct. On the charge of criminal domestic violence, the jury found him guilty of simple assault, which the trial court submitted as a lesser included offense. The trial court sentenced him to one year imprisonment, suspended upon service of ninety days with one year of probation for resisting arrest, and thirty days imprisonment, suspended, with one year probation for the disorderly conduct and simple assault convictions. This appeal follows.

## *LAW/ANALYSIS*

### I. Statements of Unknown Declarants

LaCoste argues the trial court erred in refusing to admit certain hearsay statements made by two unknown bystanders, one male and one female, which corroborated his testimony. He contends the statements were admissible under the excited utterance exception. As to the male bystander, we agree.

During cross-examination of Officer Cornwell, LaCoste asked about one male and one female bystander who were present during the arrest. Cornwell described the man as a white male wearing a Vietnam or V.F.W. hat. The man was "a little bit agitated," approached Cornwell, and tried to speak with him. When counsel asked Cornwell whether the man was trying to tell Cornwell what he had seen, the trial court sustained the State's hearsay objection. Cornwell did not take a statement from the man, but directed him to speak with the Rock Hill police officers. Cornwell then saw the man and woman walk over to a Rock Hill officer and speak with him.

The court held an in camera hearing upon LaCoste's request to determine the admissibility of any statements made by the unknown man and woman. During the hearing, Cornwell testified the man who approached him said LaCoste did not assault the lady (Mrs. LaCoste), he had done nothing wrong, and police should not be trying to handcuff him. He indicated LaCoste was in fact the victim of the woman's attack. Cornwell remembers the man was speaking and that he claimed to be a witness to the incident. However, Cornwell testified he did not know whether the man was in fact an eyewitness. About the woman, Cornwell testified he didn't recall her having much to say and stated, "I think she was there for the same purpose, but I didn't really get in a conversation with her." The trial court refused to admit the unknown man's statement because Cornwell was not able to verify the man was an eyewitness and, as such, the probative value of the statements was outweighed by the prejudice because the statements were unreliable. LaCoste was permitted, however, to elicit some testimony about the man and woman in the jury's presence. Cornwell testified he thought the man and woman were together, but he was not certain. Both were agitated and claimed to be witnesses, but the woman appeared less agitated than the man.

LaCoste also proffered the testimony of James Whiting, a mall security officer, concerning the two bystanders. Whiting testified he received a call that an officer needed help in the parking lot. When he reached the parking lot, he saw LaCoste in handcuffs and a number of police cars. He also saw an elderly man and lady who were "hollering," "He didn't do it. He didn't do it." The pair were upset, and said the

woman (Mrs. LaCoste) was beating on the man (LaCoste). The court found the statements did fit within the excited utterance hearsay exception, but that they were unreliable in that Whiting could not testify that either or both of the declarants actually observed the events in question. Because the bystanders' identities and what they observed were unknown, the court held the probative value of the statements was outweighed by their prejudicial effect.

 Rulings on the admissibility of evidence are within the trial court's sound discretion and will not be disturbed on appeal absent an abuse of that discretion resulting in prejudice to the complaining party. *State v. Hughey*, 339 S.C. 439, 453, 529 S.E.2d 721, 728–29 (2000); *State v. Varvil*, 338 S.C. 335, 340, 526 S.E.2d 248, 251 (Ct.App.2000).

 Hearsay is inadmissible except as provided by statute, the South Carolina Rules of Evidence, or other court rules. Rule 802, SCRE. The excited utterance exception permits introduction of a hearsay statement "relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Rule 803(2), SCRE. "The rationale behind the excited utterance exception is that the startling event suspends the declarant's process of reflective thought, reducing the likelihood of fabrication. In determining whether a statement falls within the excited utterance exception, a court must consider the totality of the circumstances." *State v. Dennis*, 337 S.C. 275, 284, 523 S.E.2d 173, 177 (1999).

Our supreme court addressed the admissibility of hearsay statements made by unknown declarants in *State v. Hill*, 331 S.C. 94, 501 S.E.2d 122 (1998). Hill was convicted of murdering a police officer in the parking lot of a car wash after the officer pulled him over. *Id.* at 98, 501 S.E.2d at 124. His defense at trial was that a person who had been hiding in his backseat shot the officer. *Id.* at 99, 501 S.E.2d at 124. The defense offered testimony of Kenneth Grant, a man who went to the car wash approximately fifteen minutes after the shooting. Grant testified in camera that after being at the car wash for fifteen or twenty minutes, he heard an unknown person in the crowd say there were two suspects. *Id.* at 99, 501 S.E.2d at 125. Hill attempted to introduce the statement under the

excited utterance or *res gestae* exception to hearsay, but the trial court held the testimony was inadmissible hearsay. *Id.*

The supreme court agreed, and held the excited utterance exception is limited to firsthand information, such as the statements of an actual witness to an event. *Id.* The court further held, "[t]he hearsay statement of an unknown bystander is admissible under the excited utterance exception only when the circumstances which surround it would affect the declarant in a way that assures its spontaneity and, therefore, its reliability for trustworthiness." *Id.* at 99–100, 501 S.E.2d at 125. The unknown declarant must have had an opportunity to personally observe the matter and must have perceived the event, and if the circumstances indicate the bystander did not observe the act, the declaration should be excluded. *Id.* at 100, 501 S.E.2d at 125. In *Hill,* the statement made by the unknown declarant occurred some thirty to thirty-five minutes after the event, and there was no indication that the knowledge of the declarant was firsthand. Because there was no evidence the unknown declarant witnessed the shooting and it was unknown whether the declaration was made "under the stress of excitement cause by the event," the supreme court found no error in the trial court's exclusion of Grant's testimony. *Id.*

■ Under the totality of the circumstances, we find the statements of the unknown male bystander should have been admitted. First, the defense was prepared to offer evidence the man was an actual eyewitness to the incident between LaCoste and his wife. Cornwell testified the man talked with him and identified himself as a witness to the events. *Hill* indicates statements are limited to firsthand knowledge, but does not require the firsthand knowledge of unknown declarants be established by evidence outside the statements themselves. Therefore, the man's claim to Cornwell that he witnessed the event was sufficient.

Second, the evidence demonstrates the man was under the stress of a startling event to the extent that his ability for reflective thought was suspended, and thus his statements fit within the excited utterance exception as the court found. According to Cornwell, the man was agitated and claimed to be a witness to the altercation in question. The fact that he

actually approached the officer and offered information while visibly upset supports a finding of his excited state. Moreover, Whiting testified the man was upset and "hollering." Because the evidence shows the unknown man was an actual eyewitness and the statements he made were excited utterances, the trial court erred in excluding Cornwell and Whiting's testimonies regarding these statements.[1]

## II. Directed Verdict Motions

LaCoste also contends the trial court should have directed a verdict in his favor on each of the indicted offenses because Officer McCloud did not have probable cause to arrest him when he placed him under arrest, and thus his resistance of the arrest was lawful. We disagree.

First, we note appellant did not specifically raise any lack of probable cause to arrest as a ground in his motion for directed verdict. Further, in ruling on a motion for a directed verdict, the trial court considers the existence of evidence rather than its weight, and if there is any direct or substantial circumstantial evidence tending to prove the defendant's guilt or from which his guilt may be logically deduced, the case should be submitted to the jury. *State v. Fennell*, 340 S.C. 266, 270, 531 S.E.2d 512, 514 (2000). In reviewing the denial of a motion for directed verdict, this court must view the evidence by the same standard in the light most favorable to the State. *State v. Kelsey*, 331 S.C. 50, 62, 502 S.E.2d 63, 69 (1998).

Viewing the evidence in the light most favorable to the State, we find sufficient evidence to support the submission of each of the indicted charges to the jury.

---

1. The trial court, however, did not err in excluding any alleged statements made by the woman. The record is unclear as to whether she was an eyewitness to the event. During his in camera testimony, Cornwell answered affirmatively to a question of whether the man and woman claimed to be witnesses. During another portion of his testimony, however, Cornwell remembered the woman's presence and believed she was there for the same reason as the unknown man, but he did not speak with her and she did not say much. Unlike the unknown man, he attributed no particular statement to the unknown woman. Whiting's testimony also fails to identify the woman as an eyewitness. Because it is unclear on the record before us whether the woman saw the incident in question, we find any statements attributed to her were properly excluded.

■ LaCoste was charged with criminal domestic violence (CDV) in violation of S.C.Code Ann. § 16–25–20 (Supp.2000), which provides:

It is unlawful to: (1) cause physical harm or injury to a person's own household member, (2) offer or attempt to cause physical harm or injury to a person's own household member with apparent present ability under circumstances reasonably creating fear of imminent peril.

A spouse fits within the definition of a household member regardless of whether the parties are currently cohabitating. S.C.Code Ann. § 16–25–10 (Supp.2000).

Through the testimony of Giles, the State introduced evidence that LaCoste repeatedly struck a woman who identified herself as his wife and who, immediately after the incident, reported being afraid of him. Despite the lack of testimony regarding injuries to Mrs. LaCoste, this evidence is sufficient to support submission of the case to the jury on the theory that LaCoste caused physical harm to a household member or attempted to cause the same with the "apparent present ability under circumstances reasonably creating fear of imminent peril."

■ LaCoste was also charged with violating S.C.Code Ann. § 16–9–320(A) (Supp.2000), which prohibits, *inter alia,* the knowing and willful resist of an arrest being made by one the person knows or reasonably should know is a law enforcement officer.

Officer McCloud arrived on the scene wearing his uniform and driving his marked Rock Hill Police Department patrol car. When he tried to place LaCoste under arrest, LaCoste resisted verbally and physically. He continued to resist after Officer Cornwell arrived despite the officers' use of pepper spray, holding his arms stiff to prevent the officers from handcuffing him. He was not handcuffed until additional officers arrived to assist in holding his hands behind his back. The trial court properly denied LaCoste's directed verdict motion on this charge.

■ Finally, LaCoste faced a charge of disorderly conduct in violation of S.C.Code Ann. § 16–17–530 (1985), which prohibits, *inter alia,* disorderly or boisterous conduct or the use

of obscene or profane language at any public place or gathering.

Officer McCloud testified that, as he approached LaCoste and instructed him to stop, LaCoste threw up his arms in a hostile manner and began yelling obscenities at the officer, insisting he would not comply with the officers demands. After the officer informed LaCoste he was under arrest for disorderly conduct, LaCoste continued to repeatedly shout obscenities and challenge the officer. Additionally, he taunted officers McCloud and Cornwell regarding their lack of success in bringing him under control. This testimony constituted ample evidence of disorderly conduct to enable the trial court to deny LaCoste's motion for directed verdict.

### III. Jury Charge on Right to Resist Unlawful Arrest

Next, LaCoste maintains the trial court should have issued the entire charge he requested on the right to resist an unlawful arrest. We find no error.

The law to be charged to the jury is determined by the evidence presented at trial. *State v. Cole*, 338 S.C. 97, 101, 525 S.E.2d 511, 512 (2000). "The substance of the law must be charged to the jury, not particular verbiage." *State v. Hughey*, 339 S.C. 439, 450, 529 S.E.2d 721, 727 (2000). As long as the charge is substantially correct and covers the law, reversal is not required. *State v. Hoffman*, 312 S.C. 386, 395, 440 S.E.2d 869, 874 (1994).

LaCoste submitted the following proposed charge on the right to resist an illegal arrest:

Separate and distinct from the law of self-defense is the right of any citizen to resist an unlawful arrest. Under the law of the state a person has the right to resist an unlawful arrest by force, if such be necessary. In so doing, he may use such force as is apparently necessary to regain his liberty if such be necessary.

In order to justify the use of force in resisting an unlawful arrest, it is not necessary for the defendant to show that he had no opportunity to retreat or escape. He may stand his ground and use such force as may be apparently necessary to repel an unlawful arrest or detention or interference with

his person, provided such force is reasonable in degree and kind.

The trial court instructed the jury that the State had the burden to prove beyond a reasonable doubt that the arrest was lawful. He charged them that "[n]o citizen is required to submit to an illegal arrest and may use reasonable force in resisting an illegal arrest." LaCoste objected, but the court ruled the instruction given was legally sufficient. The charge issued by the trial court essentially restated the instruction LaCoste requested, albeit more succinctly. The single concept requested by LaCoste which the court's charge did not cover was that a person resisting an illegal arrest need not show lack of opportunity for retreat or escape, but is entitled to stand his ground. However, we are of the opinion that the court did not err in failing to include this in the charge, as it was not required by the evidence presented at trial.

## IV. Simple Assault as Lesser Included Offense

Finally, LaCoste argues simple assault is not a lesser included offense of criminal domestic violence and the trial court erred in submitting it as such to the jury. We disagree.

"The test for determining if a crime is a lesser included offense is whether the greater of the two offenses includes all the elements of the lesser offense." *State v. McFadden*, 342 S.C. 629, 632, 539 S.E.2d 387, 389 (2000). If the lesser offense includes an element which is not included in the greater offense, then the lesser offense is not included in the greater offense. *Hope v. State*, 328 S.C. 78, 81, 492 S.E.2d 76, 78 (1997).

Criminal domestic violence is defined by S.C.Code Ann. § 16–25–20 (Supp.2000), which provides:

It is unlawful to: (1) cause physical harm or injury to a person's own household member, (2) offer or attempt to cause physical harm or injury to a person's own household member with apparent present ability under circumstances reasonably creating fear of imminent peril.

Assault is an attempted battery or "an unlawful attempt or offer to commit a violent injury upon another person, coupled with the present ability to complete the attempt or offer by a

battery." *State v. Sutton,* 340 S.C. 393, 397, 532 S.E.2d 283, 285 (2000).

Assault and subsection (2) of the CDV statute appear very similar. LaCoste contends, however, that simple assault is not a lesser included offense of CDV because assault includes the elements of *violent injury* and *person of another.* These differences are in fact more semantical than they are practical.

■ First, in regard to *violent injury,* "[t]he adjective 'violent' may be somewhat misleading." William Shepard McAninch & W. Gaston Fairey, *The Criminal Law of South Carolina* 188 (3d ed.1996). For example, assault and battery has also been defined as "any touching of the person of an individual in a rude or angry manner, without justification." *State v. Mims,* 286 S.C. 553, 554, 335 S.E.2d 237, 237 (1985); *see also State v. Germany,* 211 S.C. 297, 300, 44 S.E.2d 840, 841 (1947) ("Violence [as included in the definition of assault and battery] does not necessarily import serious injury."); *cf. State v. DeBerry,* 250 S.C. 314, 319, 157 S.E.2d 637, 640 (1967) (serious bodily injury is not necessary to establish assault and battery of a high and aggravated nature). Further, the essential purpose of § 16–25–20 of the Criminal Domestic Violence Act is "to protect against harm and **violence** from members of an individual's household." *Arthurs v. Aiken County,* 338 S.C. 253, 266, 525 S.E.2d 542, 549 (Ct.App.1999) (emphasis added). Finally, assault and battery of a high and aggravated nature (ABHAN) and assault of a high and aggravated nature (AHAN) have been determined to be lesser included offenses of criminal sexual conduct (CSC) in the first degree, in spite of the fact that ABHAN and AHAN specifically include the term "violent" within their definitions, while first degree CSC does not. *See State v. Frazier,* 302 S.C. 500, 502, 397 S.E.2d 93, 94 (1990) (ABHAN is an unlawful act of violent injury to the person of another, accompanied by circumstances of aggravation; ABHAN is a lesser included offense of CSC in the first degree); *State v. Murphy,* 322 S.C. 321, 325, 471 S.E.2d 739, 741 (Ct.App.1996) (because AHAN contains the same elements of ABHAN with the exception of the element of touching the victim, and ABHAN is a lesser included offense of first degree CSC, AHAN is also a lesser included offense of CSC in the first degree); S.C.Code Ann. § 16–3–652(1) (Supp.2000) (first degree CSC requires a sexual

battery and (1) aggravated force or (2) forcible confinement, kidnapping, robbery, extortion, burglary, housebreaking, or any other similar offense or act or (3) the victim, without consent, be mentally incapacitated or physically helpless by virtue of the actor's administration of any intoxicating substance); S.C.Code Ann. § 16–3–655(1) (Supp.2000) (a person is guilty of CSC in the first degree if the actor engages in sexual battery with a victim of less than eleven years of age).

As for the element of the *person of another*, to attempt to cause harm to a household member is in fact an attempt to cause harm to the person of another. The term "household member" is simply another requirement under § 16–25–20. The statute merely includes the additional element that the person of another be a household member. Therefore, the person of another is in fact an element of criminal domestic violence. In that simple assault contains no element which is not included within the offense of CDV, the former is a lesser included offense of the latter.

## *CONCLUSION*

Because the trial court erred in refusing to admit the excited utterances of the unknown male bystander, we reverse on this issue. Accordingly, LaCoste's convictions are reversed and remanded for a new trial consistent with this opinion. *See State v. Bryant*, 316 S.C. 216, 447 S.E.2d 852 (1994) (wherein supreme court reversed all of the appellant's remaining convictions, including resisting arrest, where the trial court improperly admitted evidence pitting witnesses).

**REVERSED AND REMANDED.**

SHULER, J., concurs.

ANDERSON, J., dissents in a separate opinion.

ANDERSON, J. (dissenting):

I respectfully dissent. The majority concludes the trial court erred in refusing to admit certain hearsay statements made by an unknown male bystander. In addition, the majority holds simple assault is a lesser included offense of criminal domestic violence. I disagree as to both issues.

## I. STATEMENTS MADE BY UNKNOWN
## MALE BYSTANDER

LaCoste complains the trial court erred in refusing to admit, under the exception for either excited utterance or present sense impression, certain hearsay statements made by an unknown male bystander which corroborated LaCoste's testimony. I disagree.

The admission of evidence is within the sound discretion of the trial court. *State v. McDonald,* 343 S.C. 319, 540 S.E.2d 464 (2000); *State v. James,* Op. No. 3361, 346 S.C. 303, 551 S.E.2d 591 (Ct.App.2001). A court's ruling on the admissibility of evidence will not be reversed by this Court absent an abuse of discretion or the commission of legal error which results in prejudice to the defendant. *State v. Hamilton,* 344 S.C. 344, 543 S.E.2d 586 (Ct.App.2001); *State v. Mansfield,* 343 S.C. 66, 538 S.E.2d 257 (Ct.App.2000).

South Carolina's hearsay exceptions for excited utterances and present sense impressions are identical to those contained in the federal rules of evidence. *State v. Burroughs,* 328 S.C. 489, 492 S.E.2d 408 (Ct.App.1997). The Advisory Committee's Notes to Federal rule 803, subsections (1) and (2) state that when the declarant is an unidentified bystander, the cases indicate hesitancy in upholding the statement alone as sufficient. Fed.R.Evid. 803(1), (2) advisory committee's note.

### A. Excited Utterance Exception

The issue regarding the admissibility under Rule 803(2), SCRE, of hearsay statements made by unknown declarants was examined by our Supreme Court in *State v. Hill,* 331 S.C. 94, 501 S.E.2d 122 (1998). Hill was found guilty of murdering a police officer in a car wash parking lot after the officer stopped him. Hill's defense at trial was that someone who had been hiding in the backseat of his car shot the officer. In support of this claim, Hill offered the testimony of Kenneth Grant, who was a block away from the car wash when the shooting occurred. Grant arrived at the car wash fifteen minutes after the shooting. Grant testified *in camera* that after being at the car wash for approximately fifteen or twenty minutes, he heard an unidentifiable person in the crowd state

that there were two suspects. The trial judge ruled this hearsay testimony was inadmissible.

On appeal, Hill contended the trial judge erred in refusing to allow Grant to testify as to the hearsay evidence under the excited utterance or *res gestae* exception. The Supreme Court disagreed with Hill and explained:

Rule 803(2), SCRE, states: "The following are not excluded by the hearsay rule, even though the declarant is available as a witness: ... (2) Excited utterance. A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition."

The rationale behind the excited utterance exception is that the startling event suspends the declarant's process of reflective thought, thus reducing the likelihood of fabrication. *See State v. Harrison,* 298 S.C. 333, 380 S.E.2d 818 (1989) (decided prior to the adoption of the Rules of Evidence but discussed the "excited utterance" exception in relation to *res gestae*). In determining whether a statement falls within the excited utterance exception, the totality of the circumstances is viewed. *Id.*

"Statements which are not based on firsthand information, as where the declarant was not an actual witness to the event, are not admissible under the excited utterance or spontaneous declaration exception to the hearsay rule." 23 C.J.S. *Crim. Law* § 876 (1989). The hearsay statement of an unknown bystander is admissible under the excited utterance exception only when the circumstances which surround it would affect the declarant in a way that assures its spontaneity and, therefore, its reliability for trustworthiness. *People v. Mares,* 705 P.2d 1013, 1016 (Colo.App.1985). *See also People v. Fields,* 71 Ill.App.3d 888, 28 Ill.Dec. 202, 390 N.E.2d 369 (1979) (if nature of event or circumstances indicate bystander did not observe the act, declaration should be excluded); *State v. Kent,* 157 Mich.App. 780, 404 N.W.2d 668 (1987)(declarant must have had opportunity to personally observe the matter of which he speaks); *Commonwealth v. Stetler,* 494 Pa. 551, 431 A.2d 992 (1981) (declarant must have perceived the happening); *Underwood v. State,* 604 S.W.2d 875 (Tenn.Crim.App.1979)(excited utterance of bystanders admissible when declarant observed

the act and the declaration arose from personal observation). *Cf. Crawford v. Charleston–Isle of Palms Traction Co.*, 126 S.C. 447, 120 S.E. 381 (1923)(under *res gestae* exception, declarant must have had opportunity to personally observe the matter of which he speaks).

There is no evidence the unidentified declarant witnessed the shooting. Further, it is unknown whether the declarant was under the stress of excitement caused by the event. Therefore, the trial judge did not err in ruling this statement inadmissible.

*Hill*, 331 S.C. at 99–100, 501 S.E.2d at 125.

Statements made by unidentified declarants are admissible under the excited utterance exception of Rule 803(2) if they otherwise meet the criteria of the rule. *Miller v. Keating*, 754 F.2d 507 (3rd Cir.1985). Unlike unavailability, which is immaterial to admission under Rule 803, the unidentifiability of the declarant is germane to the admissibility determination. *Id.* A party seeking to introduce such a statement carries a burden heavier than where the declarant is identified to demonstrate the statement's circumstantial trustworthiness. *Id.* At a minimum, when the declarant of an excited utterance is unidentified, it becomes more difficult to satisfy the established case law requirements for admission of a statement under Rule 803(2). *Id.* "Wigmore defines these requirements as: (1) a startling occasion, (2) a statement relating to the circumstances of the startling occasion, (3) a declarant who appears to have had opportunity to observe personally the events, and (4) a statement made before there has been time to reflect and fabricate." *Id.* at 510 (citing 6 J. Wigmore, *Evidence* §§ 1750–51 (J. Chadbourn rev.1976)).

The situation of an unavailable, anonymous, unknown declarant who makes a hearsay statement presents serious concerns for a court considering whether to admit the statement into evidence. The fact that the statements at issue here were made by an unidentified bystander raises the question of reliability.

In the present case, there is no evidence the circumstances which surround the hearsay statements affected the unknown declarant in a way that assures the spontaneity of the statement and, therefore, its reliability for trustworthiness. *See*

*Hill,* 331 S.C. at 99–100, 501 S.E.2d at 125. Further, it was never ascertained whether the utterance was made while the unknown declarant was under the stress of excitement *caused by the incident,* as is required by Rule 803(2), SCRE. Although Officer Jeffrey Cornwell testified the declarant was "agitated," this state of agitation could have been caused by some event other than the altercation.

Additionally, there was no evidence, other than the declarant's statement, to establish the unknown declarant was an actual witness to the event and was giving firsthand information. When there is no evidence of personal observation of the startling event, apart from the declaration itself, courts have hesitated to allow the excited utterance to stand alone as evidence of the declarant's opportunity to observe. *See Miller,* 754 F.2d at 511. *See also State v. Bass,* 198 Ariz. 571, 12 P.3d 796 (2000)(where sole evidence of declarant's personal perception is declaration itself, courts are reluctant to allow excited utterance to stand alone as evidence of declarant's opportunity to observe); *Cluster v. Cole,* 21 Md.App. 242, 319 A.2d 320 (Ct.Spec.App.1974)(hearsay declaration by unidentified witness to accident ruled inadmissible where nothing in statement or circumstances under which it was given would make it so inherently trustworthy as to dispense with oath and right to cross-examination). The declarant of an excited utterance must personally observe the startling event before the statement will be admitted. *Miller,* 754 F.2d at 511.

Officer Cornwell and James Whiting, the mall security officer, testified they did not know whether the man was in fact an eyewitness. All the two men could say with certainty was that the unknown declarant was in the parking lot at the time of LaCoste's arrest. Officer Cornwell declared he did not "notice" the unknown declarant when he arrived at the scene. The mere fact that the unknown declarant stated he witnessed the altercation does not lend any more credence or trustworthiness to the out-of-court statements. *See Carney v. Pennsylvania R.R. Co.,* 428 Pa. 489, 240 A.2d 71 (1968).

There was no proof the unknown declarant had an adequate opportunity to observe the events he described. The man spoke with Officer Cornwell and Officer Whiting *after* LaCoste was arrested. We have no way of knowing where this uniden-

tified person was at the time the altercation began, what ability this person might have had to hear or see what transpired, and whether the person had a relationship with the defendant so as to be biased or prejudiced in LaCoste's favor. The allowance of this type of nebulous evidence, which cannot be effectively challenged, is an open invitation to fabrication.

Whether a statement is admissible under the excited utterance exception to the hearsay rule depends on the circumstances of each case and the determination is generally left to the sound discretion of the trial court. *State v. Burdette*, 335 S.C. 34, 515 S.E.2d 525 (1999). The trial court did not abuse its discretion in concluding the statements were not admissible under the excited utterance exception because there was no sufficient showing of reliability.

### B. Present Sense Impression Exception

LaCoste's assertion that the statements should alternatively be admitted under the present sense impression exception is meritless. Rule 803(1), SCRE provides an exception to the hearsay rule for a present sense impression, which is defined as "[a] statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter." Trustworthiness is the cornerstone of Rule 803 exceptions to the hearsay rule. *State v. Bass*, 198 Ariz. 571, 12 P.3d 796 (2000). In the case at bar, there is no proof, other than the declarant's statement, that the unknown declarant "perceived" the altercation.

Viewing the totality of the circumstances, I find the statements of the unknown male bystander should not have been admitted. Thus, the trial court did not err in excluding the testimony of Officer Cornwell and Security Officer Whiting as to the hearsay statements made by the unknown male bystander.

## II. SIMPLE ASSAULT IS NOT LESSER INCLUDED OFFENSE OF CRIMINAL DOMESTIC VIOLENCE

LaCoste contends the trial court erred in charging the law of simple assault because it is not a lesser included offense of criminal domestic violence. I agree.

A Circuit Court has subject matter jurisdiction only if: (1) there has been an indictment which sufficiently states the offense; (2) there has been a waiver of indictment; or (3) the offense is a lesser included offense of the crime charged in the indictment. *State v. Lynch,* 344 S.C. 635, 545 S.E.2d 511 (2001); *Carter v. State,* 329 S.C. 355, 495 S.E.2d 773 (1998). Upon indictment for a greater offense, a trial court has subject matter jurisdiction to convict a defendant for any lesser included offense. *Browning v. State,* 320 S.C. 366, 465 S.E.2d 358 (1995); *State v. Patterson,* 337 S.C. 215, 522 S.E.2d 845 (Ct.App.1999).

The scope of the jurisdiction conferred by an indictment is limited to the charged offense and any lesser-included offenses. *State v. Gunn,* 313 S.C. 124, 437 S.E.2d 75 (1993); *State v. Tyndall,* 336 S.C. 8, 518 S.E.2d 278 (Ct.App.1999). The trial court lacks subject matter jurisdiction to convict the defendant of a crime that is not a lesser included of the offense charged in the indictment. *State v. McFadden,* 342 S.C. 629, 539 S.E.2d 387 (2000). *See also State v. Roof,* 298 S.C. 351, 380 S.E.2d 828 (1989)(defendant cannot be convicted of crime for which he is not indicted if it is not lesser included offense to that charged in indictment). The general rule is that an indictment will sustain a conviction for a lesser offense included within a greater offense charged. *State v. Fennell,* 263 S.C. 216, 209 S.E.2d 433 (1974).

The test for determining whether a crime is a lesser included offense of that charged in the indictment is whether the greater of the two offenses includes all the elements of the lesser offense. *McFadden,* 342 S.C. at 632, 539 S.E.2d at 389; *Carter,* 329 S.C. at 363, 495 S.E.2d at 777; *State v. Sprouse,* 325 S.C. 275, 478 S.E.2d 871 (Ct.App.1996). Thus, if the lesser offense includes an element not included in the greater offense, then the lesser offense is not included in the greater. *Hope v. State,* 328 S.C. 78, 492 S.E.2d 76 (1997); *State v. Bland,* 318 S.C. 315, 457 S.E.2d 611 (1995). *See also State v. Easler,* 327 S.C. 121, 489 S.E.2d 617 (1997)(lesser offense is included in greater only if each of its elements is always a necessary element of greater offense); 42 C.J.S. *Indictments and Informations* § 218 (1991)(an offense can be considered as lesser included if, and only if, all essential elements of lesser offense are included among essential elements of great-

er offense). If, under any circumstances, a person can commit the greater offense without being guilty of the purported lesser offense, then the latter is not a lesser-included offense. *Knox v. State,* 340 S.C. 81, 530 S.E.2d 887 (2000).

Generally, a lesser included offense is one composed of some, but not all, of the elements of the greater offense, and which does not have any element not included in the greater offense, so that it is impossible to commit the greater offense without also committing the lesser offense. 42 C.J.S. *Indictments and Informations* § 218 (1991). An offense is a lesser included one of another only if, in order to commit the greater offense, it is necessary to commit the lesser. 21 Am.Jur.2d *Criminal Law* § 353 (1998). Where an offense cannot be committed without necessarily committing another offense, the latter is a necessarily included offense. 41 Am.Jur.2d *Indictments and Informations* § 299 (1995). The lesser offense is a lesser-included offense if proof of every fact necessary to show the lesser offense must be proven to show the greater, notwithstanding the greater offense may require proof of several additional elements. 21 Am.Jur.2d *Criminal Law* § 353.

An offense is lesser included if the manner and means used to commit the essential elements of the charged crime include all the elements of the lesser crime. 42 C.J.S. *Indictments and Informations* § 218. An offense, in order to be a lesser included offense, must be a less serious crime in terms of its classification and degree, and no offense is deemed to be a lesser offense if it carries the same penalty as the crime under consideration. *Id.* Furthermore, a lesser included offense cannot have a mental state greater than or different from that which is required for the charged offense, nor can it have the same or more serious injury or risk of injury as compared to the charged offense. *Id.* A lesser included offense is one that requires no proof beyond that which is required for conviction of the greater offense. *State v. Cribb,* 310 S.C. 518, 426 S.E.2d 306 (1992). The greater offense must include all the elements of the lesser. *Id.*

In the instant case, LaCoste was charged with criminal domestic violence (CDV). He was convicted of simple assault. For the trial court to have jurisdiction to convict LaCoste for simple assault when he was indicted for CDV, simple assault

must be a lesser included offense of CDV. Simple assault can be a lesser included offense of CDV only if CDV contains all the elements of simple assault.

South Carolina Code Ann. § 16–25–20 (Supp.2000) sets out the definition of criminal domestic violence:

It is unlawful to: (1) cause physical harm or injury to a person's own household member, (2) offer or attempt to cause physical harm or injury to a person's own household member with apparent present ability under circumstances reasonably creating fear of imminent peril.

In contrast, the crime of assault involves an "attempted battery" or an unlawful attempt or offer to commit a violent injury upon the person of another, coupled with the present ability to complete the attempt or offer by a battery. *State v. Sutton,* 340 S.C. 393, 532 S.E.2d 283 (2000); *State v. Mims,* 286 S.C. 553, 335 S.E.2d 237 (1985); *State v. Murphy,* 322 S.C. 321, 471 S.E.2d 739 (Ct.App.1996). In addition, the Court has defined an assault as placing another in apprehension of harm. *Sutton,* 340 S.C. at 397, 532 S.E.2d at 285. In *In re McGee,* 278 S.C. 506, 508, 299 S.E.2d 334, 334 (1983), the Supreme Court held that "[w]hile words alone do not constitute an assault, if by words and conduct a person intentionally creates a reasonable apprehension of bodily harm, it is an assault." (Citation omitted).

Facially, the offense of assault contains two elements not found in the greater offense of CDV. The difference in elements between these two offenses is that (1) an assault requires a "violent" injury, as opposed to the "physical harm or injury" element of CDV and (2) the assault must be to the "person of another," whereas the CDV is limited to a person's "own household member." Each offense requires proof of an element not required by the other. These differences are dispositive. Because CDV does not necessarily include all elements of assault, the latter cannot be a lesser included offense.

Further, the legislative intent is compelling. First, the legislature could have used the phrase, "violent injury," in § 16–25–20 in place of the phrase, "physical harm or injury," if it meant for the two phrases to be synonymous. Second, the fundamental purpose of § 16–25–20 of the CDV Act is to

protect against harm and violence from *members of an individual's household*. *Arthurs v. Aiken County*, 338 S.C. 253, 525 S.E.2d 542 (Ct.App.1999). Household members are the class of persons intended to be protected by the CDV statute. *Id.* The common law definition of assault refers to a broader protected class, "the person of another."

The offenses of assault and criminal domestic violence were not contemplated by the legislature to be considered together. The two offenses protect different societal interests. Assault is a broad encompassing common law offense. Criminal domestic violence is a targeted offense to protect "household members." The legislative purpose of the CDV Act is crystal clear. The intent of the General Assembly is demonstrated with clarity from the language and framework of the legislative enactment.

Assault is not a lesser included offense of criminal domestic violence. The trial court erred in charging the jury as to simple assault. Consequently, the court lacked subject matter jurisdiction to convict LaCoste of assault.

## III. CONCLUSION

The trial court did not err in refusing to admit the hearsay statements of the unknown male bystander. However, because simple assault is not a lesser included offense of criminal domestic violence, the trial court committed reversible error in charging the jury as to simple assault. Accordingly, I would reverse LaCoste's convictions and remand for a new trial.